**AMAX COAL COMPANY, Petitioner,**

v.

**Reba BURNS, Respondent.**

**No. 87–2768.**

United States Court of Appeals,
Seventh Circuit.

Argued April 26, 1988.

Decided Aug. 22, 1988.

W.C. Blanton, Ice Miller Donadio & Ryan, Indianapolis, Ind., for appellant.

Jack N. VanStone, VanStone & Krochta, Evansville, Ind., for appellee.

---

Before CUMMINGS, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Amax Coal Company petitions for review of the decision of the Benefits Review Board of the Department of Labor. The Board reversed a denial by an administrative law judge (ALJ) of benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. (the Act). We reverse.

## I.

The claimant, Reba Burns, was married to Howard L. Burns from May 30, 1941 until his death on October 23, 1976. Howard Burns worked in United States coal mines for some twenty-nine years, ending in 1972. These facts give rise to a presumption that the deceased miner was partially or totally disabled by pneumoconiosis [1] at the time of his death, entitling his surviving spouse to benefits.[2] 30 U.S.C. § 921(c)(5) provides:

> In the case of a miner who dies on or before March 1, 1978, who was employed for 25 years or more in one or more coal mines before June 30, 1971, the eligible survivors of such miner shall be entitled to the payment of benefits ... unless it is established that at the time of his or her death such miner was not partially or totally disabled due to pneumoconiosis.

See also 20 C.F.R. § 727.204(a); Bishop v. Peabody Coal Co., 690 F.2d 131 (7th Cir. 1982). The presumption may be rebutted by a showing that (1) the miner did not have pneumoconiosis; (2) the miner was not partially or totally disabled; or (3) any disability the miner did have was not caused by pneumoconiosis. McKinnon v. Amax Coal Co., 4 BLR 1–95, 97 (1981).

The claimant, testifying at the hearing before the ALJ, stated that, beginning in about 1970, her husband suffered from shortness of breath and caught colds easily, and that his poor health forced him to quit work at the mine in March 1972. Other lay testimony by friends, relatives and co-workers indicated that Burns had serious coughing spells and was weak and short of breath.

The medical evidence established that Burns suffered from amyotrophic lateral sclerosis ("ALS"), a neurological disorder also known as Lou Gehrig's disease. Burns initially saw Dr. Tom Evans in 1972, complaining of back pain. Dr. Evans suspected ALS and eventually referred Burns to another doctor. Burns' attending physician during the progress of his ALS was Dr. William McElroy, whom he first visited in September of 1975. At that time, pulmonary function studies performed reflected test values both above and below the predicted normal range. The following January, Burns was hospitalized for aspiration pneumonia. His chest x-rays during this period showed acute bronchopneumonia, but no findings consistent with a diagnosis of pneumoconiosis were reported. At the time of his discharge, his chest was clear, while he suffered from an infrequent nonproductive cough. His last x-ray, taken in February 1976 (eight months before his death), showed clear lung fields and complete resolution of his pneumonia. Again, no changes indicating lung disease were reported. On May 12, 1976, Dr. McElroy wrote the Department of Labor in response to an inquiry about Burns' condition in connection with his then-pending black lung claim.[3] Dr. McElroy reported a number of diagnoses but made no mention of lung disease, stating that Burns' chest was clear with relatively good breath sounds.[4]

---

**1.** Pneumoconiosis, for purposes of the Act, is defined as
> any chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment.

20 C.F.R. § 727.202; Bishop v. Peabody Coal Co., 690 F.2d 131, 135 (7th Cir.1982).

**2.** It is not disputed that the miner had the necessary coal mine employment to warrant invocation of the presumption.

**3.** The miner had filed a black lung disability claim in October 1975. His widow withdrew this claim in February 1980, after she had filed for benefits under the statutory provision for survivors of deceased miners.

**4.** Specifically, Dr. McElroy listed ALS, resolved pneumonia, peptic ulcer disease, post-subtotal

He did note that his patient had serious difficulties with coughing, choking and wheezing, characterizing these symptoms as "typical" of ALS. Burns died on October 23, 1976. His death certificate listed the cause of his death as acute pulmonary edema. Dr. Howard Ropp, another treating physician, stated in September 1979 (in response to an inquiry by the Labor Department) that Burns had died of ALS, having suffered from breathing problems and pulmonary edema in the course of that disease.

■ Based upon all of this evidence, the ALJ determined that the presumption of pneumoconiosis had been rebutted by competent medical evidence and, consequently, denied benefits. Pointing out that the records contained no mention whatsoever of pneumoconiosis nor any findings to support such a diagnosis, he determined that Burns' breathing difficulties were attributable to ALS, which caused his total disability and eventual death. The ALJ relied also upon the negative x-rays and the death certificate, which made no mention of lung disease.[5]

The claimant appealed the ALJ's decision to the Benefits Review Board, arguing that because the record was devoid of any evidence affirmatively establishing that the miner did *not* have pneumoconiosis, Amax had not met its burden of rebuttal and she was entitled to prevail by virtue of the presumption in her favor. The Board characterized the issue as whether a record "silent" as to the existence of pneumoconiosis is sufficient to rebut the presumption. Finding that the presumption could be rebutted only by affirmative evidence that the miner was not disabled by pneumoconiosis, the Board reversed the ALJ's decision as not supported by substantial evidence and ordered that Amax pay benefits to the claimant. Amax now requests review of the Board's decision.

## II.

■ Petitioner Amax argues that the record provides a complete picture of Burns' physical condition prior to his death, and that given this detailed record, the lack of any mention of pneumoconiosis gives rise to a reasonable inference that none was present. Further, petitioner asserts that the record is not, as the Board characterized it, "silent" as to pneumoconiosis, but instead includes medical opinions attributing Burns' respiratory symptoms to ALS. The claimant responds that the medical evidence is in fact silent and that, given the presumption in her favor, the gap in the evidence compels a grant of benefits.

The question for our review is whether the ALJ's decision is supported by substantial evidence, in accord with the law, and not irrational. *Old Ben Coal Co. v. Prewitt,* 755 F.2d 588, 590 (7th Cir.1985); *Peabody Coal Co. v. Benefits Review Board,* 560 F.2d 797, 799 (7th Cir.1977). If it is, the Board's decision must be reversed, even if it is also supported by substantial evidence. *Smith v. Director,* 843 F.2d 1053, 1056 (7th Cir.1988); *Prewitt,* 755 F.2d at 589. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). A reviewing body may not set aside an inference merely because it finds the opposite conclusion more reasonable or because it questions the factual basis. *Smith,* 843 F.2d at 1057 (citing *Peabody,* 560 F.2d at 802). Drawing inferences from the evidence is part of the ALJ's role as factfinder. *Id.*

Our review of the record convinces us that the ALJ's decision was supported by substantial evidence. Given the extensive and detailed medical reports of the miner's physical condition, none of which mentions

gastrectomy and vagotomy, incisional herniorrhaphy, degenerative arthritis of the cervical spine, Peyronie's disease, post-bilateral inguinal herniorrhaphy, neuromuscular disfunction of the esophagus, and diverticulosis of the sigmoid colon.

5. While neither of these factors alone is sufficient to rebut the presumption, *see* 20 C.F.R. § 727.204, each may be considered to have some probative force. *Freeman v. Director,* 687 F.2d 214, 217 (7th Cir.1982).

any lung disease (other than pneumonia described as consistent with his ALS), the ALJ's inference that none existed was both medically proper and reasonable. *See Bishop*, 690 F.2d at 136 (presumption held rebutted where medical records indicated treatment for respiratory symptoms attributed to heart disease but made no mention of lung disease). Particularly telling is Dr. McElroy's report of May 12, 1976, which, in response to the Labor Department's specific inquiry regarding Burns' black lung claim, reported no pneumoconiosis despite a comprehensive listing of his other health problems. In addition, Dr. Ropp's report attributed Burns' breathing impairments to his neurological disorder. The x-ray reports and pulmonary function studies did not indicate the presence of lung disease.

Medical reports attributed Burns' symptoms to ALS and revealed no diagnosis of lung disease. Considering these reports together with the death certificate making no mention of pneumoconiosis and the x-rays taken eight months before his death showing clear lung fields, this record fairly supports the ALJ's inference that Burns suffered from no lung disease. The ALJ's decision, that Amax rebutted the presumption by showing that Burns was not disabled by lung disease, was thus amply supported by substantial evidence.

The claimant argues that the ALJ's decision is not supported by substantial evidence because there is no affirmative evidence *disproving* the existence of lung disease. While we recognize that Amax bore the burden of persuasion, it must be remembered that its burden was to prove a negative, that is, the nonexistence of lung disease. The claimant in effect argues that the presumption of pneumoconiosis can never be rebutted absent a specific statement by a physician ruling out pneumoconiosis. We disagree. Faced with a complete report of the miner's physical condition which contained no diagnosis of lung disease nor any evidence supporting such a diagnosis, the ALJ reasonably inferred that lung disease was not present. This inference did not shift the burden of persuasion to the deceased miner's survivors; it merely allowed the coal company to rebut the

presumption with a record suggesting that were lung disease present, it would have been detected and reported. This case presents an extensive and thorough medical record, including chest x-rays and pulmonary function studies, which gives no indication of lung changes consistent with pneumoconiosis. Just eight months before Burns' death, x-rays indicated a clear chest. Less than six months before Burns' death, Dr. McElroy reported no lung disease. His respiratory symptoms were specifically attributed to his ALS. We hold that such a comprehensive record, devoid of any indication of pneumoconiosis, may fairly be deemed affirmative evidence supporting the inference that none was present.

The claimant argues that this case is controlled by *Old Ben Coal Co. v. Prewitt*, 755 F.2d 588 (7th Cir.1985). In *Prewitt*, the deceased miner was conceded to have had pneumoconiosis, but because he was already totally disabled by a heart condition at the onset of his lung disease, the employer argued that he was not disabled by lung disease. The medical records indicated only that the heart condition was totally disabling; it was unclear what if any degree of disability might have been attributable to lung disease alone. We held, given the presumption favoring the claimant, that the statute directed a grant of benefits.

*Prewitt*'s analysis of the impact of a silent record is inapplicable here. The record in *Prewitt* was termed "silent" because it lacked sufficient information from which to draw a definitive conclusion as to the contested factual issue, that is, the level of disability attributable to lung disease. Significantly, in the case before us, the record is silent in that it makes no mention of any lung disease independent of Burns' primary disabling condition. It does not, however, lack information about Burns' condition; on the contrary, it provides a comprehensive catalogue of his health problems, which included ALS, gastrointestinal difficulties and arthritis, but no indication of pneumoconiosis.

Because we find that the decision of the ALJ was supported by substantial evi-

dence, the decision of the Benefits Review Board is REVERSED.