**George PANCAKE, Plaintiff–Appellant,**

**v.**

**AMAX COAL COMPANY and Director, Office of Workers' Compensation Programs, United States Department of Labor, Defendants–Appellees.**

**No. 87–2138.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1988.

Decided Sept. 27, 1988.

---

**1252**

Jack VanStone, VanStone & Krochta, Evansville, Ind., for petitioner.

James F. Bleeke, Ice Miller Donadio & Ryan, Indianapolis, Ind., for respondent.

Before FLAUM, MANION and KANNE, Circuit Judges.

KANNE, Circuit Judge.

In 1984, an Administrative Law Judge awarded "black lung" benefits to George Pancake under the Black Lung Benefits Act of 1977. The Benefits Review Board of the United States Department of Labor reversed that award. George Pancake now seeks review of the Board's decision and order. We grant the petition for review and direct remand to the Administrative Law Judge for further proceedings.

## I. BACKGROUND

George Pancake worked as a coal miner for well over twenty-five years. All but one week of his entire career was spent working in surface mines where he was exposed continually to coal dust. He worked for Blackfoot Coal and Land Corporation from the 1930's until the 1960's. Later, he worked for AMAX Coal Co. from April 18, 1968, until his retirement on November 12, 1974.

Prior to his retirement, George Pancake began to experience a tightness in his chest and difficulty in breathing, and he developed a persistent cough. Because of these problems, he retired at age 62. His condition has worsened since then and he now is unable to perform even simple household activities or hobbies. He regularly uses a medicated breathing aid and is plagued by shortness of breath.

On June 9, 1978, George Pancake filed a claim for benefits under the Black Lung Benefits Act of 1977, 30 U.S.C. §§ 901–945. On February 20, 1980, the deputy commissioner of the Department of Labor's Office of Workers' Compensation Programs ("OWCP") initially determined that George Pancake was entitled to receive benefits under 20 C.F.R. § 727.203 *et seq.* AMAX[1] contested this determination and requested a hearing before an administrative law judge.

Because George Pancake's claim was filed before April 1, 1980, it is governed by the "interim regulations" of Part C of the Act. *See* 30 U.S.C. § 931 *et seq.* Under the regulations, a miner who is engaged in coal mining employment for at least ten years is presumed to be totally disabled due to pneumoconiosis ("black lung") if one of five medical requirements is met: (1) a chest x-ray, biopsy, or autopsy establishes the existence of the disease; (2) ventilatory studies establish the presence of a chronic respiratory or pulmonary disease; (3) blood gas studies demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood; (4) other medical evidence establishes the presence of a totally disabling respiratory or pulmonary impairment; and a fifth requirement which is irrelevant to this case.[2] If such

---

**1.** AMAX does not dispute that it is the "responsible operator" under the Act, 20 C.F.R. § 725.492, and as such is liable for any black lung benefits owed to George Pancake.

**2.** Section 727.203 of Title 20 of the Code of Federal Regulations states:

(a) *Establishing Interim Presumption.* A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, ... arising out of that employment, if one of the following medical requirements is met:

(1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis ...;

(2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease ...;

(3) Blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood is indicated ...;

(4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment; ....

evidence is introduced, a presumption arises that the claimant is entitled to black lung benefits. However, this presumption may be rebutted by evidence that: (1) the claimant is still working in the coal mine or performing comparable work; (2) the claimant is able to perform his usual coal mine work or similar work; (3) the miner's disability was not caused by his coal mine employment; or (4) the miner actually does not have pneumoconiosis. *See* 20 C.F.R. § 727.203(b)(1)–(4).[3]

On July 25, 1984, an Administrative Law Judge ("ALJ") conducted a hearing on George Pancake's claim for benefits. The ALJ approved that claim on December 27, 1984. In his decision and order, the ALJ first noted that George Pancake had worked as a coal miner for over ten years. The ALJ then found that ventilatory studies established the presence of a chronic respiratory or pulmonary disease (20 C.F.R. § 727.203(a)(2)) and that "other medical evidence" established the presence of a disabling respiratory or pulmonary impairment (20 C.F.R. § 727.203(a)(4)).[4] These findings created a presumption that George Pancake was totally disabled due to pneumoconiosis and thus was entitled to benefits under the Act. The ALJ then discussed the rebuttal evidence offered at the hearing.

As the "responsible operator," AMAX had offered evidence to rebut that presumption, arguing that George Pancake's disability did not arise out of coal mine employment (20 C.F.R. § 727.203(b)(3)) and that he in fact does not have pneumoconio-

sis (20 C.F.R. § 727.203(b)(4)). AMAX sought to prove that George Pancake's disability was the result of many years of cigarette smoking which had resulted in chronic pulmonary and respiratory impairments.

At the hearing, AMAX first relied upon the deposition and written medical report of Dr. Kenneth Wilhelmus, who examined George Pancake on September 17, 1980.[5] Dr. Wilhelmus administered several medical tests, including a chest x-ray, pulmonary function tests, an electrocardiogram, and arterial blood gas studies. Based upon the results of the tests and a complete physical examination of George Pancake, Dr. Wilhelmus concluded that George Pancake did not have pneumoconiosis. Instead, George Pancake had a chronic obstructive pulmonary disease, pulmonary emphysema, and mild chronic bronchitis.[6] Dr. Wilhelmus opined that the respiratory problems were caused by George Pancake's extensive history of smoking cigarettes, rather than exposure to coal dust.[7]

AMAX also introduced the written medical report of Dr. William H. Getty, who had examined George Pancake on January 4, 1979. Like Dr. Wilhelmus, Dr. Getty reviewed chest x-rays and pulmonary study results. Dr. Getty concluded that George Pancake suffered from "possible arteriosclerotic heart disease" and "chronic bronchitis." He opined that the bronchitis was "probably associated with smoking," although he failed to articulate a basis for

---

3. Section 727.203 further states:
 (b) *Rebuttal of Interim Presumption.* In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:
 . . . .
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mining employment; or
 (4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.

4. The ALJ examined the results of various studies, tests, and examinations conducted by Dr. Peters, Dr. Lopez, Dr. Um, Dr. Getty, Dr. Wilhelmus, and Dr. Williams.

5. Dr. Wilhelmus is an occupational medicine specialist. *Underhill v. Peabody Coal Co.,* 687 F.2d 217, 222 (7th Cir.1982). He practices in the area of industrial medicine and has been a "coal mine doctor" for over 40 years.

6. Dr. Wilhelmus did opine that Mr. Pancake suffered a very severe degenerative condition in his hip caused by arthritis.

7. At a minimum, Mr. Pancake smoked one pack of cigarettes a day for over 40 years. However, he did quit smoking in 1975 and according to at least one doctor, his disability has continued to worsen since then.

reaching this conclusion.[8]

The ALJ ruled that AMAX had failed to rebut the interim presumption. The ALJ first stated that Dr. Wilhelmus and Dr. Getty had failed to indicate "with any degree of medical certainty" that George Pancake's pulmonary and respiratory impairments were linked to cigarette smoking rather than to coal dust exposure. He further discredited and disregarded Dr. Wilhelmus' medical opinions because in the ALJ's opinion, Dr. Wilhelmus had based his findings exclusively upon the negative chest x-rays in contravention of section 413(b) of the Act, 30 U.S.C. § 933(b). Thus, AMAX failed to satisfy the requirements of 20 C.F.R. § 727.203(b)(3).

The ALJ next held that AMAX had failed to prove that George Pancake in fact did not have pneumoconiosis. The ALJ stated that no physician had expressed an opinion that the ventilatory and blood gas studies ruled out the presence of pneumoconiosis.[9] Furthermore, the ALJ again held that Dr. Wilhelmus impermissibly had relied upon a negative chest x-ray to support his conclusions. Thus, AMAX also failed to satisfy the requirements of 20 C.F.R. § 727.203(b)(4). Taken together, these findings entitled George Pancake to benefits solely upon his ability to raise the interim presumption.

AMAX appealed the ALJ's decision to the Benefits Review Board of the United States Department of Labor. The Board reversed the ALJ's award of benefits. The Board first stated that the ALJ had erred in applying an overly restrictive "medical certainty" standard in this case which improperly increased AMAX's burden of proof. The Board then held that the ALJ erroneously had discredited and disregarded Dr. Wilhelmus' report. The Board concluded that the record clearly established that Dr. Wilhelmus had relied upon several tests—not just a chest x-ray which was negative for pneumoconiosis—to determine that George Pancake did not have a coal dust related disability. Thus, the ALJ was required to weigh Dr. Wilhelmus' medical opinions with all other relevant rebuttal evidence.

Finally, the Board held that AMAX had rebutted the interim presumption pursuant to 20 C.F.R. § 727.203(b)(3) "as a matter of law."[10] The Board concluded that the record contained no evidence which contradicted Dr. Wilhelmus' medical opinion that cigarette smoking was the cause of George Pancake's disability. The Board stated that Dr. Henry Peters' medical report, offered by George Pancake at the hearing, did not contradict Dr. Wilhelmus' findings because it did "not affirmatively attribute [George Pancake's] impairment to his coal mine work."[11] As a result, the Board held that "as a matter of law," Dr. Wilhelmus' testimony established "that there is no sig-

8. The ALJ noted that Dr. Getty did not indicate that he even was familiar with the extent of George Pancake's smoking history. In its decision and order, the Board agreed that Dr. Getty's opinion could fail for lack of a proper evidentiary foundation. However, the Board also noted that nothing in Dr. Getty's report contradicted or detracted from Dr. Wilhelmus' opinions.

9. In Dr. Wilhelmus' deposition, he testified that the pulmonary function studies did not indicate whether cigarette smoking or coal dust exposure was the cause of George Pancake's disability.

10. Because the Board found that rebuttal had occurred pursuant to 20 C.F.R. § 727.203(b)(3), it did not address AMAX's arguments that rebuttal also had occurred pursuant to 20 C.F.R. § 727.203(b)(4).

11. On February 24, 1984, Henry Peters, D.O., examined George Pancake and conducted pulmonary function and arterial blood gas studies, as well as a chest x-ray. George Pancake offered Dr. Peters' report at the administrative hearing to prove that he in fact was disabled and that his disability was the result of pneumoconiosis.

In the report, Dr. Peters stated that:
the cigarette smoking did contribute to [George Pancake's] difficulty but his coal mine employment also did, and I would therefore state that his chronic pulmonary disease was due to his coal mine employment. It is hard for me to determine which of these was the greatest contributor to his present difficulty.
Dr. Peters later stated, "It is my feeling that [George Pancake] is completely and totally disabled from pulmonary problems as well as his other physical problems and that the pulmonary disability is due to pneumoconiosis."

nificant relationship between claimant's disability and his coal mine work." *See* 20 C.F.R. § 727.203(b)(3).

George Pancake now petitions this court to review the Board's decision and order. We have jurisdiction pursuant to 33 U.S.C. § 921(c). *See also* 20 C.F.R. § 725.482(a).

## II. *ANALYSIS*

■ We must determine whether the ALJ's findings are "supported by substantial evidence, in accord with the law, and not irrational." *AMAX Coal Co. v. Burns*, 855 F.2d 499, 501 (7th Cir.1988); *see also Arch Mineral Corp. v. Director, O.W.C.P.*, 798 F.2d 215, 221 (7th Cir.1986). If the ALJ's decision in fact is supported by substantial evidence, the Board's decision and order must be reversed even if it too is supported by substantial evidence. *Burns*, 855 F.2d at 501. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). "A reviewing body may not set aside an inference merely because it finds the opposite conclusion more reasonable or because it questions the factual basis." *Id.* (citing *Smith v. Director, O.W.C.P.*, 843 F.2d 1053, 1057 (7th Cir.1988)).

Clearly, the evidence supports the ALJ's finding that George Pancake was entitled to the initial presumption of disability due to pneumoconiosis. However, we agree with the Board that the ALJ improperly disregarded medical evidence offered by AMAX to rebut that presumption. Nevertheless, we are unable to hold that substantial evidence supports the Board's decision that AMAX rebutted that presumption as a matter of law. Therefore, we remand this case to the ALJ for further proceedings consistent with this opinion.

### A. *Medical Opinions Based Solely upon Negative Chest X-Rays*

As a general rule, an ALJ "must consider all relevant medical evidence, cannot substitute his expertise for that of a quali-fied physician, and, absent countervailing clinical evidence or a valid legal basis for doing so, cannot simply disregard the medical conclusions of a qualified physician." *Wetherill v. Director, O.W.C.P.*, 812 F.2d 376, 382 (7th Cir.1987) (citing *Peabody Coal Co. v. Director, O.W.C.P.*, 778 F.2d 358, 362–63 (7th Cir.1985); *Peabody Coal Co. v. Lowis*, 708 F.2d 266, 275–76 (7th Cir.1983); *Underhill v. Peabody Coal Co.*, 687 F.2d 217, 222–23 (7th Cir.1982); *Peabody Coal Co. v. Director, O.W.C.P.*, 581 F.2d 121, 124 (7th Cir.1978)). Furthermore, an ALJ may not selectively analyze the record to reach a desired outcome. *Peabody Coal Co.*, 778 F.2d at 363 (citing *Underhill*, 687 F.2d at 223).

Section 413(b) of the Act, 30 U.S.C. § 923(b), prohibits denial of a claim solely upon the basis of a negative chest x-ray. *See Lowis*, 708 F.2d at 274; *Underhill*, 687 F.2d at 223; *see also Mullins Coal Co. v. Director, O.W.C.P.*, —— U.S. ——, 108 S.Ct. 427, 436, 98 L.Ed.2d 450 (1987). In this case, the ALJ relied upon section 413(b) as the valid legal basis to support his decision to disregard and discredit Dr. Wilhelmus' medical opinions. The ALJ believed that those opinions in fact were based solely upon chest x-rays which were negative for pneumoconiosis.

■ We agree with the Board that the ALJ selectively employed the evidence in a manner to support his desired outcome. For example, when the ALJ relied upon Dr. Wilhelmus' opinions to determine that George Pancake was disabled and thus entitled to the interim presumption, he characterized Dr. Wilhelmus' written report as a "well-documented exercise of reasoned medical judgment." Nevertheless, later in that same decision and order, the ALJ discredited Dr. Wilhelmus' medical opinions because they allegedly were based "solely on the negative x-ray."

Furthermore, the record reveals that Dr. Wilhelmus conducted a physical examination of George Pancake and reviewed his medical history. He also examined the results of an exercise test, an electrocardiogram, pulmonary function tests, arterial

blood gas studies, as well as chest x-rays. He concluded that George Pancake's respiratory and pulmonary problems were the result of a long history of tobacco abuse. Nothing in the record indicates that Dr. Wilhelmus disregarded the objective medical evidence and relied solely upon the negative chest x-rays. Thus, we are unable to hold that substantial evidence supports the ALJ's finding that Dr. Wilhelmus relied solely upon negative chest x-rays to form his medical opinions.

Nevertheless, George Pancake contends that the ALJ properly refused to consider Dr. Wilhelmus' medical opinions in this case because of the "hostility-to-the-Act" rule. This rule allows an ALJ to disregard medical testimony when a physician's testimony is affected by his subjective personal opinions about pneumoconiosis which are contrary to the congressional determinations implicit in the Act's provisions.

■ We have held that the proper test for determining if the rule is applicable is "whether and to what extent those hostile opinions affected the medical diagnosis." *Wetherill*, 812 F.2d at 382. In *Wetherill*, we noted that the rule has been approved to reject a physician's testimony that pneumoconiosis was not present when "he stated he would not diagnose pneumoconiosis absent positive x-ray evidence that the disease existed," despite the Act's provision for finding pneumoconiosis even when negative x-ray evidence exists. *Id.* (quoting *Black Diamond Coal Mining Co. v. Benefits Review Board*, 758 F.2d 1532, 1534 (11th Cir.1985)). We also discussed a case in which the rule was used to reject two doctors' testimony that a claimant's disability was caused by smoking and not his pneumoconiosis because their testimony "was based on their shared opinion that simple pneumoconiosis is never disabling," despite the Act's contrary premise. *Id.* at 382–83 (quoting *Kaiser Steel Corp. v. Director, O.W.C.P.*, 748 F.2d 1426, 1430 (10th Cir.1984)). Thus, we concluded that an ALJ may reject such evidence only when the physician's opinion is actually "hostile." *Id.* at 383.

■ George Pancake contends that Dr. Wilhelmus' deposition and medical report evidences hostility toward the Act. However, our review of the record does not support such an argument. Nothing in the record suggests that Dr. Wilhelmus believes that pneumoconiosis is never disabling or that he will diagnose pneumoconiosis only upon evidence of a positive chest x-ray. Thus, we hold that the "hostility-to-the-Act" rule does not justify the ALJ's decision to disregard Dr. Wilhelmus' opinions in this case.

Clearly, Dr. Wilhelmus was impressed by George Pancake's extensive history of tobacco abuse and he believed such abuse was consistent with the objective test results. Furthermore, as we have held in the past, negative chest x-rays do "assume some probative value when corroborated by other evidence such as expert medical testimony." *Underhill*, 687 F.2d at 223 (citations omitted). *See also Lowis*, 708 F.2d at 274. Thus, for all of the reasons discussed above, we hold that the ALJ improperly discredited and disregarded Dr. Wilhelmus' medical opinions.

### B. *Interim Presumption Rebutted as a Matter of Law*

■ Although we agree with the Board that the ALJ was required to consider Dr. Wilhelmus' medical opinions in weighing the rebuttal evidence, we hold that substantial evidence does not support the Board's decision that the interim presumption was rebutted "as a matter of law." We agree with George Pancake that this case must be remanded to the ALJ for his review of all of the relevant evidence and in light of the appropriate standard for rebuttal pursuant to 20 C.F.R. § 727.203(b)(3).

The Board concluded that no medical evidence contradicts Dr. Wilhelmus' report and that this "uncontradicted medical evidence establishes, as a matter of law, that there is no significant relationship between [George Pancake's] disability and his coal mine work." We conclude that George Pancake did present evidence which apparently contradicts Dr. Wilhelmus' opinion

that George Pancake's disability is wholly unrelated to coal dust exposure.

For example, George Pancake offered the written medical report of Dr. Henry Peters, D.O., who concluded that George Pancake's pulmonary disability was "due to pneumoconiosis." [12] Further, merely because Dr. Peters stated in another part of his report that he could not determine whether cigarette smoking or coal dust exposure "was the greatest contributor" to George Pancake's "difficulty" does not render his medical opinion "unreasoned." *Accord Peabody Coal Co.*, 778 F.2d at 363 ("The concurrence of two sufficient disabling medical causes, one within the ambit of the Act, and the other not, will in no way prevent a miner from claiming benefits under the Act." (citation omitted)). Further, the ALJ expressly found that Dr. Peters' report was a well-documented exercise of reasoned medical judgment—a finding that the Board cannot challenge as unsupported by substantial evidence. Thus, we hold that substantial evidence does not support the Board's determination that Dr. Wilhelmus' report is "uncontradicted" and that this case must be remanded to the ALJ for consideration of all of the relevant evidence.

## C. Standard of Rebuttal Pursuant to 20 C.F.R. § 727.203(b)(3)

■ AMAX argues that when the ALJ considers the rebuttal evidence under 20 C.F.R. § 727.203(b)(3) on remand, the ALJ must determine whether coal dust exposure was a "significant contributing factor" to George Pancake's total disability —that is, "[i]n order to rebut ... an employer must show that there is not a significant relationship between the miner's total disability and his occupational exposure." *Shaw v. Bradford Coal Co.*, 7 B.L.R. 1–462, 1–466 (1984). AMAX contends that the Board has declined to apply the "extremist position" of the Third, Sixth, and Eleventh Circuit Courts of Appeals outside of those circuits. These courts have held that 20 C.F.R. § 727.203(b)(3) permits an award of benefits for total disability of

which pneumoconiosis is merely "a contributing cause." *See Gibas v. Saginaw Mining Co.*, 748 F.2d 1112, 1120 (6th Cir.1984), *cert. denied*, 471 U.S. 1116, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985); *Alabama By-Prods. Corp. v. Killingsworth*, 733 F.2d 1511 (11th Cir.1984); *see also Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 162 n. 5 (3d Cir.1986). AMAX states that this court has never addressed the standard for rebuttal of interim presumptions pursuant to 20 C.F.R. § 727.203(b)(3) squarely. However, we think we have indicated our position clearly.

In *Wetherill*, we discussed the rebuttal of interim presumptions pursuant to 20 C.F.R. § 727.203(b)(3). Subsection (b)(3) allows a responsible operator to rebut an interim presumption by proving that "the total disability ... did not arise in whole or in part out of coal mine employment." We stated that this subsection "enables an employer to rebut the interim presumption by proving that the miner's pneumoconiosis was not *a contributing cause* of his total disability." *Wetherill*, 812 F.2d at 380 (discussing and citing, *inter alia, Kertesz*, 788 F.2d at 162 n. 5, 163 (3d Cir.); *Gibas*, 748 F.2d at 1120 (6th Cir.)) (emphasis added). Thus, we have addressed the issue squarely and we apparently are in accordance with the other "extremist positions." Consequently, upon remand, the ALJ must review all of the relevant evidence and determine whether pneumoconiosis is a contributing cause of George Pancake's disability.

## D. The "Reasoned Medical Judgment" Standard

■ As a final matter, we address the Board's claim that the ALJ employed an improper "reasonable degree of medical certainty standard" when he judged the medical evidence offered by AMAX to rebut the interim presumption. We agree with the Board that such a standard is improper in light of *Underhill*, 687 F.2d 217. *See also Lowis*, 708 F.2d at 273. In *Underhill*, we held that an ALJ must measure expert medical testimony by a "reasoned medical judgment" standard, rather

12. *See supra* note 10.

than a stricter "reasonable degree of medical certainty" standard. 687 F.2d at 223. However, we do not agree with the Board that the ALJ in fact employed an improper standard in this case.

In his decision and order, the ALJ used the phrase "any degree of medical certainty" to modify the medical opinions as to the cause of George Pancake's respiratory problems. This phrase indicated that the ALJ believed that the medical evidence in fact proved nothing, rather than not proving a fact to a "reasonable certainty." Consequently, we hold that the Board had no basis to reverse the ALJ on the use of an incorrect evidentiary standard. In fact, the ALJ never had an opportunity to apply any evidentiary standard because he refused to consider AMAX's medical evidence which he believed was based solely upon examination of a negative chest x-ray.

### III. *CONCLUSION*

We hold that the ALJ properly found that George Pancake was entitled to rely upon an interim presumption that he was totally disabled due to pneumoconiosis. Nevertheless, we agree with the Board that substantial evidence does not exist to support the ALJ's decision to disregard and discredit Dr. Wilhelmus' medical opinions. The ALJ improperly found that AMAX's medical evidence was based solely upon a negative chest x-ray when such evidence in fact was based upon objective test results, a physical examination, and a medical and employment history, as well as a chest x-ray. Thus, the ALJ was required to consider all relevant medical evidence.

We also hold, however, that substantial evidence does not support the Board's decision that the interim presumption was rebutted as a matter of law. Contrary to the Board's findings, evidence exists which apparently contradicts Dr. Wilhelmus' medical opinions. Thus, we remand this case to the ALJ to determine whether AMAX rebutted the interim presumption in light of all of the relevant evidence and the appropriate standard of rebuttal pursuant to 20 C.F.R. § 727.203(b)(3). Finally, we disagree with the Board's determination that

the ALJ applied the improper "reasonable medical certainty" evidentiary standard.

The petition for review is GRANTED. The Benefits Review Board is directed to vacate its decision and order and the decision and order of the Administrative Law Judge and further is directed to remand the case to the Administrative Law Judge for further proceedings consistent with this opinion.