912 F.2d 164
 FREEMAN UNITED COAL MINING CO., Petitioner,
v.
BENEFITS REVIEW BOARD, UNITED STATES DEPARTMENT OF LABOR,
Office of Workers' Compensation Programs, U.S.
Department of Labor and John D. Wolfe,
Respondents.
 No. 89-2305.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 1, 1990.
Decided Aug. 15, 1990.
As Amended Sept. 27, 1990.
 
 Louis R. Hegeman, Jay D. Stein, Kathryn S. Mueller, Gould & Ratner, Chicago, Ill., for Freeman United Coal Min. Co.
 Linda M. Meekins, Benefits Review Bd., Dept. of Labor, Washington, D.C., for Benefits Review Bd.
 Harold B. Culley, Jr., Raleigh, Ill., for John D. Wolfe.
 Donald S. Shire, Sol. Gen., Michael J. Denney, Dept. of Labor, Office of the Sol., Washington, D.C., John H. Secaras, Sol. Gen., Dept. of Labor, Chicago, Ill., Rae Ellen Frank James, Dept. of Labor, Black Lung Div., Paul Frieden, U.S. Dept. of Labor, Washington, D.C., for Office of Workers' Compensation Programs.
 Before BAUER, Chief Judge, CUDAHY, Circuit Judge, and PELL, Senior Circuit Judge.
 PELL, Senior Circuit Judge.
 
 
 1
 Petitioner, Freeman United Coal Mining Co. (Freeman) seeks review of the decision by the Benefits Review Board of the Department of Labor (BRB) ordering an award of benefits to John D. Wolfe under the Black Lung Benefits Act (the Act), 30 U.S.C. Sec. 901 et seq. The BRB reversed a denial of benefits by an Administrative Law Judge (ALJ).
 
 
 2
 On May 19, 1977, Wolfe, then a coal miner for Freeman, filed a claim for benefits under the Act.[1] The ALJ held a formal hearing on August 26, 1980. Wolfe was born in 1914 and worked as an underground coal miner with various companies for 38 years. Wolfe worked continuously for Freeman from 1953 until 1977, when he retired. Wolfe's job classification since about 1960 had been "belt spillage." In this capacity, he was responsible for overseeing the movement of coal along a segment of belt; making sure the belt functioned properly; and cleaning up spills along the belt. Prior to his employment with Freeman, Wolfe worked for CW & F as an underground trip rider and motorman from 1942 until 1953. Before that, he worked as an underground coal miner for United Collieries and Peabody Coal Co. for three or four years.
 
 
 3
 Wolfe testified at the hearing. He first experienced breathing problems in 1955. He became short of breath when he lifted heavy items or when he had to hurry to do something. His breathing problems had progressively worsened since 1955, and around 1962 or 1963, he developed a nighttime coughing problem. Wolfe can walk a block or a block and a half without experiencing shortness of breath. He takes no medication for his breathing problems. From age 16 to 21 Wolfe smoked two packs of cigarettes per day. He has been a non-smoker since age 21. Wolfe also had a severe bout with pneumonia in his early teens. He did not have any lingering cough as a result of either his smoking or his pneumonia.
 
 
 4
 Wolfe has experienced health difficulties in addition to his breathing difficulties. He suffers from arthritis in his shoulders and hips, and he has high blood pressure. He takes medication for both of these ailments. Wolfe sustained a severe injury in 1958, while working as an underground miner. A rock fall crushed his right leg and broke his back. He missed two and a half years of work as a result. He also wears a built up shoe, two and a quarter inches, on his right leg.
 
 
 5
 The Director of the Office of Worker's Compensation Programs (OWCP) offered as documentary evidence, a September 14, 1977, reading by Dr. Thomas Minetree, of a chest x-ray of Wolfe as positive for pneumoconiosis. The Director also offered a 1978 rereading of that x-ray by Dr. Leonard Bristol, a "B" reader. Dr. Bristol read the x-ray as negative for pneumoconiosis. Three medical reports were also entered into evidence.
 
 
 6
 On June 23, 1981, the ALJ issued a Decision and Order denying benefits. The ALJ rejected the 1977 positive reading of the x-ray because the signature at the bottom of the reading, that of Dr. Owen Taylor, did not appear on the line reserved for the reader of the x-ray and because Dr. Taylor's board qualifications were not listed. The ALJ found the signature on the reader line to be undecipherable, and that the qualifications of that person were also not in the record. The ALJ, relying on Dr. Bristol's negative reading of the x-ray, found that Wolfe had not satisfied the requirements for invocation of the presumption of total disability due to pneumoconiosis under 20 C.F.R. Sec. 727.203(a)(1). The ALJ also found that Wolfe had failed to meet the requirements for invocation under the remaining subsections of Section 727.203 and thus denied an award of benefits.
 
 
 7
 On February 26, 1986, the BRB reversed the ALJ's findings regarding Subsection (a)(1) invocation. The BRB found that there was an ostensibly readable signature on the reader line of the September 14, 1977 x-ray, that of Dr. Minetree. The BRB also found that Dr. Bristol's qualifications as a "B" reader were, like Dr. Minetree's, not in the record and that the ALJ was not permitted to take selective notice of readers' qualifications. The BRB thus found that the ALJ's decision as to invocation under Subsection (a)(1) was not supported by substantial evidence and remanded the case for reconsideration in light of its recognition of Dr. Minetree as the signer of the 1977 reading.
 
 
 8
 On April 28, 1987, the ALJ issued his Decision and Order on Remand denying benefits. The ALJ found that because Dr. Minetree was a board-certified radiologist, he could not credit Dr. Bristol's negative rereading of the x-ray. The ALJ thus found that Wolfe had satisfied the requirements for the presumption of total disability due to pneumoconiosis under Sec. 727.203(a)(1). The ALJ further found, however, that Freeman had successfully rebutted the presumption under 20 C.F.R. Sec. 727.203(b)(2), (b)(3), and (b)(4). In doing so, the ALJ considered, as persuasive evidence, the negative rereading of the x-ray by Dr. Bristol and two medical reports. Dr. Murphy, who examined Wolfe on July 11, 1972--eight years before the initial hearing on Wolfe's claim--found that Wolfe had no "serious problem with his lungs," and that Wolfe could continue working at the mines. Dr. Peart, who examined Wolfe in 1980, found that Wolfe had "mild [chronic obstructive pulmonary disease] (COPD)," but that it was not of a magnitude as to "disable him severely."
 
 
 9
 On appeal, the BRB reversed the ALJ again, this time remanding the case for an award of benefits. The BRB held that Mullins Coal Co. of Va., Inc. v. Director, OWCP, 484 U.S. 135, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987), required reversal of the ALJ's finding that Freeman had successfully rebutted the presumption under Subsection (b)(4). The BRB also held that Dr. Murphy's and Dr. Peart's reports were insufficient as a matter of law to establish either Subsection (b)(2) or (b)(3) rebuttal. This petition followed.
 
 
 10
 Freeman raises two issues on appeal. First, the company claims that the BRB exceeded its scope of review in reversing the ALJ's first decision denying invocation of the presumption in Sec. 727.203(a)(1). Second, Freeman claims that the ALJ's second decision finding rebuttal under Subsections 727.203(b)(2) and (b)(3) was supported by substantial evidence. Respondent asserts that if Freeman is correct as to issue two, then this Court's decision in Taylor v. Peabody Coal Co., 892 F.2d 503 (7th Cir.1990), requires reconsideration of Freeman's rebuttal evidence under the less restrictive Part 410 regulations.[2]
 
 
 11
 An award of benefits under the Act means that the claimant has shown that he is (1) totally disabled (2) due to pneumoconiosis (3) caused by his coal mining employment. Collins v. Old Ben Coal Co., 861 F.2d 481, 483 (7th Cir.1988). Although this appeal is from a decision of the BRB, the panel sits in review of the decisions by the ALJ. Dotson v. Peabody Coal Co., 846 F.2d 1134, 1137 (7th Cir.1988). Review of statutory interpretation and regulatory language is de novo. Zettler v. Director, OWCP, 886 F.2d 831, 834 (7th Cir.1989). Review of an ALJ's factual determinations is limited to whether the decision was rational, supported by substantial evidence, and consistent with applicable law. Id. at 834. If the ALJ's decision is supported by substantial evidence then a BRB decision reversing it must itself be reversed, even if it is also supported by substantial evidence. Amax Coal Co. v. Burns, 855 F.2d 499, 501 (7th Cir.1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The ALJ has sole power to make credibility determinations and resolve inconsistencies in the evidence. Meyer v. Ziegler Coal Co., 894 F.2d 902, 908 (7th Cir.1990).
 
 
 12
 Freeman contends that the BRB exceeded its authority in reversing the ALJ's first decision denying Wolfe the presumption under 20 C.F.R. Sec. 727.203(a)(1). Subsection 727.203(a)(1) states:
 
 
 13
 (a) A miner who engaged in coal mine employment for at least ten years will be presumed to be totally disabled due to pneumoconiosis ... if (1) a chest roentgenogram (x-ray), ... establishes the existence of pneumoconiosis.
 
 
 14
 Freeman argues that the ALJ's decision to credit Dr. Bristol's negative re-reading of Wolfe's x-ray over the initial positive reading by Dr. Minetree was supported by substantial evidence and in accordance with the law and, therefore, the BRB was required to affirm the ALJ's decision denying benefits.
 
 
 15
 Respondent contends that Freeman has waived this claim because the company did not raise it as an issue in Wolfe's second appeal to the BRB. Respondent points to footnote two of the second BRB decision to support his waiver argument. In note two, the BRB stated: "on appeal, no challenge is made to the [ALJ's] invocation findings pursuant to 20 C.F.R. Sec. 727.203(a)(1), and this finding, therefore, is affirmed." The BRB's reference is directed at Freeman's decision not to challenge the sufficiency of the x-ray evidence on remand. Footnote two is unrelated to the x-ray rereading issue which arose in the initial hearing before the ALJ. The BRB decided that issue against Freeman in the appeal of the first ALJ decision. Under the BRB's decisional law, the x-ray issue raised by Freeman on appeal to this Court was law of the case after the first BRB decision, and the BRB would not have considered it had Petitioner raised it in the second appeal. Bridges v. Director, O.W.C.P., 6 BLR 1-988, 1-989-90 (1984). Thus, Petitioner's claim is properly before us on this appeal.
 
 20 C.F.R. Sec. 727.206(b)(1) states:
 
 16
 In all claims where there is other evidence of a pulmonary or respiratory impairment, a board-certified or board-eligible radiologist's interpretation of a chest X-ray shall be accepted by the Office if the X-ray is in compliance with the requirements of Sec. 410.428(b) of this title and if such x-ray has been taken by a radiologist or qualified radiologic technologist or technician and there is no evidence that the claimant has been fraudulently represented.
 
 
 17
 The BRB has interpreted this regulation as a prohibition against the admission of a rereading of x-rays such as the one in this case where the initial reading of the x-ray is done by a board-certified radiologist and the x-ray is otherwise conforming to regulatory standards. Free v. Director, OWCP, 6 BLR 1-450, 1-451 (1984) (citing Tobias v. Republic Steel Corporation, 2 BLR 1-1277 (1981)).
 
 
 18
 In his initial decision, the ALJ determined that the rereading prohibition did not apply because the name of the reader on the initial positive reading of the x-ray was undecipherable and because the reader's qualifications were not in the record. Consideration of a rereading in such circumstances is not prohibited. Free, 6 BLR at 1-452. The ALJ thus credited the rereading by Dr. Bristol, whom the ALJ noted was a "B" reader of long standing. The BRB remanded for reconsideration because it found that the name "Dr. Minetree" was ostensibly readable on the positive reading of the x-ray and that the ALJ had selectively taken notice of Dr. Bristol's credentials and not Dr. Minetree's.
 
 
 19
 Freeman asserts that the ALJ's initial decision rejecting the positive x-ray reading was supported by substantial evidence and in accordance with law; thus, the BRB should have affirmed ALJ's decision not to credit it. Considering the record on appeal, Freeman's argument has seeming merit. Until Wolfe filed his brief to the BRB on the appeal of the first ALJ decision, the name "Dr. Minetree" appears nowhere in the record. When the ALJ admitted the medical report allegedly bearing his signature into evidence, Wolfe neither objected to its admission nor attempted to clarify the document. Also, the qualifications of the doctor who signed the bottom of the report, Owen H. Taylor, M.D., were not in the record. In making his initial determination, the ALJ had before him only the x-ray report with the alleged signature of Dr. Minetree on it. This document is a part of the record on appeal. Both the printed name and the signature of the reader are in pencil. Unless one is told that the name of the reader is "Thomas W. Minetree," as the claimant informed the BRB on the first appeal, there is no way to discern who the reader is.
 
 
 20
 The ALJ's refusal to credit this document is arguably rational. The BRB has held that "the party who attempts to rely upon the first x-ray interpretation bears the burden of establishing for the record the qualifications of the x-ray reader in question." Free, 6 BLR at 1-453. In this case, it appears that Wolfe never established the name of the initial reader of the x-ray. Furthermore, 20 C.F.R. Sec. 718.108(c) states that medical reports shall specify the name of the reader of the x-ray. Although Dr. Minetree's name is apparently on the report, since it is illegible, it may not be "specified." Finally, the record on appeal shows that Wolfe did not state that the initial reader of the x-ray was Dr. Thomas W. Minetree until his appeal to the BRB. If this is actually the case, then the BRB arguably exceeded its scope of review by considering evidence that the claimant had not provided to the ALJ.
 
 
 21
 The panel must decide "whether the ALJ's decision that the x-ray evidence was insufficient to invoke the presumption is supported by substantial evidence and in accordance with law." Freeman United Coal Mining Co. v. Benefits Review Bd., 879 F.2d 245, 248 (7th Cir.1989). Because the name "Dr. Minetree" was not established before the ALJ, his decision refusing to credit the positive x-ray reading is technically supported by substantial evidence.
 
 
 22
 This result, however, we do not regard as sufficiently satisfactory for disposition of the issue. A close examination of the record shows that the Director of OWCP offered both x-ray readings into evidence and the ALJ accepted them without raising any question as to the identity of the reader. Ten months later, the ALJ issued his decision disregarding the initial x-ray reading for the previously stated reasons. Until that point, the identity of the first reader of the x-ray had never been an issue.
 
 
 23
 Neither party cites any authority on the ALJ's duty or authority to develop the record or clarify ambiguities in the record. As noted above, our case law dictates the ALJ has the sole responsibility for determining the credibility of evidence. However, 20 C.F.R. Sec. 725.455(c) requires the ALJ to afford the parties a fair hearing, as well. Part of that duty mandates that the ALJ, "shall at the hearing inquire fully into all matters at issue." 20 C.F.R. Sec. 725.455(b) (section regulating admission of evidence). Finally, 20 C.F.R. Sec. 725.456(e) allows the ALJ, upon determining "that the documentary evidence ... is incomplete as to any issue which must be adjudicated may, in his or her discretion, ... allow the parties a reasonable time to obtain and submit any such evidence, before the termination of the hearing." See Amax Coal Co. v. Director, 892 F.2d 578, 580-81 (7th Cir.1989) (discussing regulations). The ALJ did not take advantage of this section prior to rejecting Dr. Minetree's reading of the x-ray.
 
 
 24
 In this case, the ALJ did not determine credibility so much as selectively reject relevant medical evidence, see Pancake v. Amax Coal Co., 858 F.2d 1250, 1255 (7th Cir.1988) (ALJ may not selectively analyze the record to reach a desired outcome), simply because he could not read the signature of a doctor of whom at least the claimant knew the identity and that apparently was that of a board-certified radiologist.[3] The ALJ never expressed any reservation about the evidence at the time it was admitted or thereafter. Certainly, Freeman did not object to its admission. Thus, Wolfe was not on notice that the credibility of the Dr. Minetree reading was in issue. Subsection 725.455(b) requires the ALJ to inquire into such issues at the hearing, and Subsection 725.456(e) permits the ALJ to expand the record. He did not do so.
 
 
 25
 Under ordinary circumstances, the BRB's interpretation of the statutory and regulatory schemes would require the first reading to be considered by the ALJ. Indeed, on remand, the ALJ found, after having been informed that the signature on the first reading was that of Dr. Minetree, the initial x-ray reading sufficient to invoke Subsection 727.203(a)(1) presumption of total disability due to pneumoconiosis.
 
 
 26
 Although the ALJ's decision to credit Dr. Bristol's x-ray may have been supported by substantial evidence, as discussed above, we find that it was not in accord with the law, as required, Dotson v. Peabody Coal Co., 846 F.2d 1134, 1137 (7th Cir.1988), because the ALJ failed to sufficiently inquire into all matters at issue and abused his discretion by failing to ensure that the documentary evidence was complete. Had the ALJ done so, the "issue" of who read the rejected x-ray report would have been resolved at the initial hearing. Therefore, we affirm the BRB's first decision in this case because the ALJ failed in his duty to inquire into all matters at issue.
 
 
 27
 Freeman challenges the BRB's second decision in this case, which held that Freeman had failed, as a matter of law, to rebut Subsection 727.203(a)(1) presumption of total disability due to pneumoconiosis and which ordered an award of benefits to Wolfe. On remand, the ALJ found that Freeman had established rebuttal of the presumption based on 20 C.F.R. Secs. 727.203(b)(2), (b)(3), and (b)(4). Those Subsections provide:
 
 
 28
 (b) * * * The presumption in paragraph (a) ... shall be rebutted if:
 
 
 29
 (2) in light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work;
 
 
 30
 (3) the evidence establishes that the total disability ... of the miner did not arise in whole or in part out of coal mine employment;
 
 
 31
 (4) the evidence establishes that the miner does not, or did not, have pneumoconiosis.
 
 
 32
 The ALJ relied on the 1978 rereading of the x-ray by Dr. Bristol and the medical reports of Doctors Peart and Murphy to find that the claimant had " 'no serious problem with his lungs,' " and that the claimant's " 'mild COPD' was 'not of such degree as to disable him severely.' " Furthermore, the ALJ credited Dr. Peart's conclusion citing "a teen-age pulmonary infection and smoking as factors in the COPD."
 
 
 33
 The BRB reversed all three of the ALJ's rebuttal findings. First, the BRB held that the Supreme Court's decision in Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987), precluded a finding of (b)(4) rebuttal in this case. This is a proper interpretation of Mullins, and Freeman does not challenge this holding.
 
 
 34
 The BRB rejected the ALJ's findings as to (b)(2) and (b)(3)[4] rebuttal in two terse paragraphs, finding that Freeman's proof was insufficient as a matter of law. We must determine whether the decisions of the ALJ were supported by substantial evidence and in accordance with law.
 
 
 35
 The ALJ did not state specifically which of the factors he cited in his second opinion supported his Subsection (b)(2) findings. Although this might ordinarily be a ground for remand to allow the ALJ an opportunity to clarify his reasoning, see Peabody Coal Co. v. Helms, 901 F.2d 571, 574 (7th Cir.1990) (remanding to allow ALJ to support prior findings with record evidence), the BRB, citing Wetherhill v. Director, OWCP, 812 F.2d 376 (7th Cir.1987), found that the opinions of Doctors Peart and Murphy were insufficient as a matter of law to establish Subsection (b)(2) rebuttal. Although Wetherhill is not determinative of this issue,[5] we agree with the BRB's conclusion.
 
 
 36
 In order to establish Subsection (b)(2) rebuttal, the employer must establish that the miner is able to do his usual coal mine work or comparable and gainful work. Neace v. Director OWCP, 867 F.2d 264, 268-69 (6th Cir.1989); York v. Benefits Review Board, 819 F.2d 134, 138 (6th Cir.1987). Wetherhill recognized that the literal terms of Subsection (b)(2) are met if the claimant is unable to work for any reason. Wetherhill, 812 F.2d at 379. Thus, the employer may not rely upon a showing that the miner was not totally disabled by the respiratory impairment alone. York, 819 F.2d at 138. Medical evidence used to support a finding of Subsection (b)(2) rebuttal should therefore consider "the exertive requirements of the [claimant's] job or the extent to which [the claimant's] symptoms would hinder his performing comparable work. A mere finding of 'no impairment' ... cannot be equated with a finding that a claimant can continue to perform coal mining work." Sykes v. Director, OWCP, 812 F.2d 890, 893 (4th Cir.1987). But see Neace, 867 F.2d at 269 (Given absence of any substantial medical evidence of any type of impairment other than a potential respiratory impairment, ALJ's determination of no disabling respiratory impairment found to be equivalent to finding that claimant could perform usual coal mine work).
 
 
 37
 The evidence relied upon by the ALJ in his decision does not meet these requirements. The ALJ relied on Dr. Murphy's conclusion that Wolfe "does not have any serious problem with his lungs," and Dr. Peart's conclusion that Wolfe's "mild COPD" was "not of such degree as to disable him severely." Neither of these conclusions addresses the exertive requirements of Wolfe's coal mining employment, and as the Sykes decision held, a "mere finding of no impairment" should not be equated with a finding that a claimant can continue to perform coal mining work for purposes of Subsection (b)(2).
 
 
 38
 Furthermore, the remaining record evidence could not meet the requirements for (b)(2) rebuttal, either. Dr. Peart's medical report simply does not address Wolfe's ability to perform work comparable to his prior coal mining activities at all. Dr. Murphy's report, although concluding that "this man can work out his remaining time in the mines without any danger," was completed in 1972, a full eight years prior to the hearing in this case. Thus, its usefulness for Subsection (b)(2) purposes is dubious at best. See Cooley v. Island Creek Coal Co., 845 F.2d 622, 624 (6th Cir.1988) (relevant inquiry under Subsection (b)(2) is whether a claimant is disabled on the date of the hearing). Finally, Wolfe suffers from asthma and severe arthritis, although the ALJ did not consider this evidence. He may be totally disabled under Subsection (b)(2) independent of his respiratory ailment.
 
 
 39
 The record in this case contains no evidence that actually addresses Wolfe's ability to work at the time of the hearing. Therefore, the record before the ALJ was insufficient, as a matter of law, to establish Subsection (b)(2) rebuttal.
 
 
 40
 In Pancake v. Amax Coal Co., 858 F.2d 1250, 1257 (7th Cir.1988), this Court discussed the requirements for rebuttal under Subsection (b)(3). This Subsection " 'enables an employer to rebut the interim presumption by proving that the miner's pneumoconiosis was not a contributing cause of his total disability.' " Id. (quoting Wetherhill v. Director, OWCP, 812 F.2d 376, 380 (7th Cir.1987)) (emphasis in original). Thus, Freeman was required to show that pneumoconiosis was in no way related to the claimant's disability. The ALJ based its finding of (b)(3) rebuttal on Dr. Peart's medical report which stated that Wolfe's "mild COPD" was of questionable etiology. Dr. Peart cited Wolfe's five-year smoking history--from 1930 to 1935--and his teenage bout with pneumonia as "factors" in his disability. Dr. Peart concluded that claimant's "occupation most likely is coincidental."
 
 
 41
 In terms of the requirements of Subsection (b)(3), Dr. Peart made essentially no conclusion as to whether the claimant's coal mining employment was actually a cause of his respiratory disease. Silence in the record as to causation will not defeat the presumption favoring the claimant. Amax Coal Co. v. Burns, 855 F.2d 499, 502 (7th Cir.1988) (citing Old Ben Coal Co. v. Prewitt, 755 F.2d 588 (7th Cir.1985). Furthermore, Dr. Peart's medical report indicates that he did not believe Wolfe's assertion that he smoked for only five years; however, there was no evidence impeaching Wolfe's testimony. Dr. Peart's unsubstantiated belief may have tainted the reliability of his diagnosis that smoking was a cause of the claimant's condition. In any event, Dr. Peart's conclusions as to causation do not meet the rigorous Subsection (b)(3) rebuttal requirements of Pancake and Wetherhill, which require that the evidence rule out pneumoconiosis as a factor in Wolfe's disability. We find that Freeman failed to establish Subsection (b)(3) rebuttal as a matter of law.
 
 
 42
 In conclusion, we AFFIRM both decisions of the BRB in this cause in all respects.
 
 
 
 [1]
 Because Wolfe filed his claim after January 1, 1974, his was a Part C claim under the Act, 30 U.S.C. Secs. 931-945. The regulations applicable to his claim are found in 20 C.F.R. Sec. 727 et seq
 
 
 [2]
 Because we affirm the BRB's decision we do not reach this issue
 
 
 [3]
 Indeed, the BRB stressed, in reversing the ALJ on this issue, that the qualifications of Dr. Bristol, whose reading the ALJ did credit, were, likewise, not in the record and, yet, the ALJ took notice of them
 
 
 [4]
 Rebuttal under Subsection (b)(2) establishes that the miner was not totally disabled within the meaning of the Act. Rebuttal under Subsection (b)(3) establishes that a claimant's total disability was not caused by coal mine employment. Mullins, 108 S.Ct. at 435 n. 26
 
 
 [5]
 In Wetherhill, this court deferred determination of the requisite standards for establishing Subsection (b)(2) rebuttal. 812 F.2d at 379-80. The issue has not since been resolved