**William Frank MEYER, Petitioner,**

v.

**ZEIGLER COAL COMPANY, and Director, Office of Workers' Compensation Programs, Respondents.**

No. 86–2292.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1989.

Decided Jan. 31, 1990.

Thomas Broden (argued), Notre Dame Law School, Notre Dame, Ind., Kathleen M. Burke, for petitioner.

Mark E. Solomons (argued), Arter & Hadden, Washington, D.C., for respondent, Zeigler Coal Co.

Thomas L. Holzman, Office of the Sol., Brian Peters, Dept. of Labor, Black Lung Div., Washington, D.C., for respondent Office of Workers' Compensation Programs.

Carla Chapman, Benefits Review Bd., Dept. of Labor, Washington, D.C., for respondent Benefits Review Bd.

Before CUDAHY and KANNE, Circuit Judges and ESCHBACH, Senior Circuit Judge.

KANNE, Circuit Judge.

William Meyer retired from thirty-nine years of coal mine employment on December 30, 1976, at age 60. On March 3, 1978, Meyer filed an application for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–45 (the "Act"). The Department of Labor ("DOL") initially denied Meyer's application for benefits. Notwithstanding this denial, the DOL eventually reversed course and entered an initial determination of entitlement to benefits.

Subsequently, Zeigler Coal Company ("Zeigler"), Meyer's employer, contested Meyer's entitlement to benefits. A formal hearing was held before an administrative law judge ("ALJ") and on October 5, 1983, the ALJ issued a decision and order reversing the determination of entitlement to benefits.

In reaching his decision, the ALJ evaluated the record under the DOL's interim presumption system, set out in 20 C.F.R. § 727.203. Under 20 C.F.R. § 727.203(a)(1)-(4), a coal miner is presumed totally disabled due to pneumoconiosis if he has engaged in coal mine employment for at least ten years [1] and can establish one of the following medical requirements:

(1) A chest roentgenogram (x-ray), biopsy, or autopsy establishing the existence of pneumoconiosis,

(2) Ventilatory studies conforming to values set by regulation,

(3) Blood gas studies conforming to values set by regulation, or

(4) Other medical evidence, including the documented opinion of one physician exercising reasoned medical judgment, establishing the presence of a totally disabling respiratory or pulmonary impairment.

The ALJ determined that the interim presumption of disability could not be invoked under either § 727.203(a)(1), (2) or (3).

1. Subsequent to the ALJ's decision, the Supreme Court held that this categorical, ten-year mining service requirement was invalid because it violated 30 U.S.C. § 902(f)(2). *Pittston Coal Group v. Sebben*, 488 U.S. 105, ——, 109 S.Ct. 414, 420, 102 L.Ed.2d 408 (1988). Since Meyer was a coal miner for thirty-nine years, the ten-year requirement presented no obstacle to his invoking a presumption of disability. Therefore, the possible retroactivity of *Pittston Coal* would not affect the ALJ's decision and need not be discussed here.

However, relying on the medical opinion of Dr. Robert Fulk, the ALJ found that Meyer invoked the presumption of disability under § 727.203(a)(4).[2]

The ALJ concluded, however, that Meyer was not entitled to benefits because Zeigler successfully rebutted the § 727.203(a)(4) interim presumption. In his rebuttal inquiry, the ALJ relied for the most part on the medical opinion evidence of Dr. Thomas Dew. The ALJ found that Dr. Dew's opinion, coupled with the objective test findings in the record, rebutted the interim presumption under § 727.203(b)(2). That section states that an employer can rebut a presumption of disability by establishing that an employee is capable of doing his usual coal mine work or comparable and gainful work.[3]

Meyer subsequently appealed the ALJ's decision to the Benefits Review Board of the Department of Labor. The Board issued a decision and order summarily affirming the ALJ's denial of benefits, holding that the ALJ's rebuttal findings were supported by substantial evidence. Meyer now appeals to this court. For the reasons discussed below, we affirm the ALJ's decision.

In this appeal, Meyer contends that there are two basic grounds on which to reverse the ALJ's decision. First, Meyer argues that the ALJ erred in refusing to invoke the interim presumption under 20 C.F.R. § 727.203(a)(2). Second, Meyer contends the ALJ erred in holding that Zeigler rebutted the 20 C.F.R. § 727.203(a)(4) interim presumption.

We disagree with Meyer's contention that the ALJ erred because he did not invoke the § 727.203(a)(2) presumption. Under § 727.203(a)(2), ventilatory studies must establish the presence of a chronic respiratory or pulmonary disease according to values specified in that section. That section contains a table which sets out several pairs of forced expiratory volume ("F.E.V.") and maximum voluntary ventilation ("M.V.V.") values. If the claimant's F.E.V. and M.V.V. values are the same or lower than the values specified in the table for that claimant's height, the ALJ must invoke the (a)(2) interim presumption.

■ Meyer argues that the ALJ erred because he failed to properly apply the values specified in the (a)(2) table. Meyer

2. Zeigler contends that the ALJ erred in invoking the § 727.203(a)(4) presumption because he failed to follow the standard of evidence the Supreme Court set forth in *Mullins Coal Co., Inc. of Virginia v. Director, Office of Workers' Compensation Programs,* 484 U.S. 135, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987). In *Mullins,* the Supreme Court held that in order to invoke the interim presumption under § 727.203(a)(1)–(4), the claimant must establish the presence of an invocation fact by a preponderance of the evidence. *Id.* at 147–48, 108 S.Ct. at 434. Thus, at the invocation stage, the ALJ must weigh a single item of evidence against conflicting evidence before he holds that the single item invokes the presumption.

It is not disputed that the ALJ did not apply the preponderance of the evidence standard enunciated in *Mullins.* The ALJ invoked the § 727.203(a)(4) presumption based solely on the medical report of Dr. Fulk without weighing it against contrary medical evidence in the record. However, at the time of the ALJ's decision, *Mullins* was not yet law. The ALJ rendered his decision in October, 1983, four years before the *Mullins* decision. At that time, the rule of the Benefits Review Board was that a single reasoned medical opinion was sufficient to invoke the (a)(4) presumption while the weighing of

conflicting medical reports at invocation constituted error. *Stiner v. Bethlehem Mines Corp.,* 3 BLR 1–487 (1981). Neither this court nor the Supreme Court had explicitly addressed the issue at the time of the ALJ's decision.

Even if *Mullins* applied retroactively to the time of the ALJ's decision, and because of this retroactivity we found that the ALJ erred in invoking the § 727.203(a)(4) presumption, the ALJ's error would not alter our holding that Meyer is not entitled to benefits. Because the possible retroactivity of *Mullins* would not change the result, it is unnecessary to conduct a more searching analysis of the retroactivity issue.

3. The ALJ held that Zeigler also rebutted the interim presumption of disability under § 727.203(b)(3), which states that the presumption is rebutted by evidence the total disability did not arise in whole or in part out of coal mine employment. Subsequent to the ALJ's decision, this court held in *Taylor v. Peabody Coal,* 892 F.2d 503, 506 (7th Cir.1989), that § 727.203(b)(3) was invalid because it violated 30 U.S.C. § 902(f)(2). Since the ALJ's § 727.203(b)(3) rationale no longer constitutes valid grounds for rebuttal, our opinion will address the validity of the ALJ's rebuttal pursuant to § 727.203(b)(2) only.

claims that the ALJ was incorrect in using F.E.V. and M.V.V. values corresponding to a claimant 72 inches tall because the evidence supports the fact that Meyer is 73 inches in height. Meyer contends that because one of the ventilatory studies in the record contained F.E.V. and M.V.V. values lower than those in the table for a 73 inch claimant, the ALJ was required to invoke the (a)(2) presumption.[4]

The standard of review for black lung claims has long been settled. Findings of fact and conclusions following therefrom must be affirmed if supported by substantial evidence on the record considered as a whole. *Banks v. Chicago Grain Trimmers Ass'n*, 390 U.S. 459, 467, 88 S.Ct. 1140, 1145, 20 L.Ed.2d 30 (1968); *Amax Coal Co. v. Director, Office of Workers' Compensation Programs*, 801 F.2d 958, 961 (7th Cir.1986); *Peabody Coal Co. v. Director, Office of Workers' Compensation Programs*, 778 F.2d 358, 362 (7th Cir. 1985); *Old Ben Coal Co. v. Prewitt*, 755 F.2d 588, 589 (7th Cir.1985). In addition, this court cannot reweigh the evidence or set aside an inference because it finds an opposite inference more reasonable or because it questions its factual basis. *Amax Coal Co. v. Burns*, 855 F.2d 499, 501 (7th Cir.1988); *Peabody Coal Co. v. Benefits Review Bd.*, 560 F.2d 797, 802 (7th Cir. 1977). The power to make credibility determinations and resolve inconsistencies in the evidence presented is within the sole province of the ALJ. *Freeman United Coal Mining Co. v. Benefits Review Bd.*, 879 F.2d 245, 249 (7th Cir.1989); *Peabody Coal Co. v. Benefits Review Bd.*, 560 F.2d at 802.

Here, the ALJ was presented with conflicting evidence which he was entitled to resolve. Dr. Dew's report had Meyer measured at 72 inches tall while Dr. Fulk's report and two ventilatory studies put Meyer at 73 inches. At the formal hearing, Meyer's attorney noted this discrepancy and asked Meyer what his true height was. Meyer said it was 73 inches. At that point, both Meyer's attorney and Zeigler's attorney suggested to the ALJ that a physician present at the hearing measure Meyer. The ALJ declined the opportunity to have Meyer measured.

While perhaps the ALJ should have inquired more extensively into what Meyer's height was, or taken further steps to determine his height, our only task is to determine whether there was substantial evidence in the record to support the ALJ's finding that Meyer was 72 inches tall. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rich-*

---

4. Even if the ALJ had applied the F.E.V. and M.V.V. values corresponding to a 73 inch claimant, he did not necessarily have to invoke the (a)(2) interim presumption. At the time of the ALJ's decision, the rule of the Benefits Review Board was that all conflicting ventilatory studies had to be weighed prior to invoking the (a)(2) interim presumption. *Stiner v. Bethlehem Mines Corp.*, 3 BLR 1–487 (1981). Therefore, the ALJ did not have to invoke the (a)(2) presumption unless he found that a preponderance of the ventilatory studies established a chronic respiratory or pulmonary disease. The record before the ALJ contained reports of two valid ventilatory studies. On June 13, 1978, Dr. Fulk performed a ventilatory study and reported that Meyer demonstrated an F.E.V. of 2.9 L and an M.V.V. of 100 L/min. In a test on November 5, 1980, Meyer demonstrated an F.E.V. of 2.61 L and an M.V.V. of 107 L/min. Section 727.203(a)(2) requires a miner of 73 inches to demonstrate an F.E.V. equal to or less than 2.7 L and an M.V.V. equal to or less than 108 L/min. to evidence the existence of a chronic respiratory or pulmonary disease. Therefore,

even had the ALJ used the values corresponding to a 73 inch claimant, only one of the two valid ventilatory studies contained values sufficient to evidence a chronic respiratory or pulmonary disease.

While we point out that the ALJ would not have erred in refusing to invoke the (a)(2) interim presumption even had he applied values corresponding to a 73 inch claimant, we cannot uphold the ALJ's decision on these grounds. It is well established that administrative decisions will be reviewed only on the basis of the findings and conclusions that are a part of the record. This court cannot uphold the ALJ's decision and order by supplying different reasons from those on which the ALJ had relied. *Securities & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 93–95, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943). Since the ALJ refused to invoke the (a)(2) presumption on the ground that neither of the two ventilatory studies produced values equal to or below the table values for a 72 inch miner, we must determine whether the ALJ erred on that ground.

*ardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Ray v. Bowen*, 843 F.2d 998, 1001 (7th Cir.1988). Here, the ALJ was faced with conflicting evidence regarding Meyer's height. One doctor's measurement put Meyer at 72 inches while others' put him at 73 inches. We cannot say that the ALJ was unreasonable in accepting one of these measurements as adequate to support a conclusion of what Meyer's height actually is. While further steps to determine Meyer's height would have been desirable, Dr. Dew's 72 inch measurement was adequate to support the ALJ's conclusion that Meyer was indeed 72 inches tall. The ALJ, therefore, did not misapply the § 727.203(a)(2) table when he compared Meyer's F.E.V. and M.V.V. values to the values corresponding to a 72 inch miner. Since the ALJ did not misapply the table, he did not err in refusing to invoke the § 727.203(a)(2) interim presumption.

Even if we agreed with Meyer that the ALJ erred in refusing to invoke the § 727.203(a)(2) interim presumption, we would still affirm the ALJ's decision to deny Meyer benefits because we find that the ALJ correctly held that Zeigler rebutted the presumption of disability under § 727.203(b)(2). Section 727.203(b)(2) provides that the interim presumption is rebutted if, in light of all relevant evidence, it is established that the claimant is able to do his usual coal mine work or comparable and gainful work. The ALJ held that the § 727.203(b)(2) rebuttal was established because the evidence demonstrated that Meyer did not have a totally disabling respiratory disease.

 Meyer argues that the ALJ erred because he applied an incorrect legal standard in determining whether Zeigler established the (b)(2) rebuttal. Specifically, Meyer asserts that the ALJ erred because he placed substantial weight on Dr. Dew's conclusion that "Meyer [is] a healthy man capable of doing anything that any other 63 year old man is capable of doing." Meyer asserts that the (b)(2) standard is not whether the claimant can do what any other 63 year old can do but whether the claimant can perform his usual or comparable work. Meyer contends that the ALJ should have applied either the "usual coal mine employment" test or the "last job" test this court discussed in *Peabody Coal Co. v. Director, Office of Workers' Compensation*, 778 F.2d 358 (7th Cir.1985) and, since he failed to use either of these tests to weigh the rebuttal evidence, his decision is contrary to law.

We disagree with Meyer's contention that the ALJ applied an incorrect legal standard in determining (b)(2) rebuttal. Meyer argues that under *Peabody*, Zeigler has not established the (b)(2) rebuttal because Meyer has shown that he is unable to perform the task of car loader operator, the "last job" he held as a coal miner. In *Peabody*, the claimant invoked the interim presumption and the ALJ, weighing conflicting medical reports, held that the defendant-employer failed to rebut it. *Id.* at 362. The employer urged the use of a "last job" test arguing that the evidence rebutted the presumption because it showed that the claimant was able to operate the last machine he had worked on as a coal miner. In affirming the ALJ's decision, we refused to adopt this "last job" test. On the contrary, we held that the ALJ's failure to use a "last job" test was not reversible error. *Id.* at 364. We also refused to attach a narrow meaning to the "usual coal mine employment" phrase of (b)(2). We rejected the contention that the phrase must mean either the last position the claimant held or the coal mining task the claimant usually performed. *Id.* The "usual coal mine employment" phrase was not meant to encompass only mining tasks that the claimant had at one time or another performed. Rather, the phrase was meant to insure that a presumption of disability would not be rebutted by a situation in which a claimant: (i) obtains only "make work" or sporadic mining jobs; (ii) makes only marginal earnings; (iii) performs poorly due to his health; or (iv) through extraordinary physical effort, continues to work in mines to insure survival during the pendency of his claim. *See, e.g., Echo v. Director, Office of Workers' Compensation Programs*, 744 F.2d 327, 330–31 (3d

Cir.1984); *Kane v. Matthews*, 583 F.2d 878, 882 (3d Cir.1978); *Everly v. Califano*, 582 F.2d 1352, 1353 (4th Cir.1978); *Collins v. Mathews*, 547 F.2d 795, 797 (4th Cir.1976); *Felthager v. Weinberger*, 529 F.2d 130, 133 (10th Cir.1976).

This case, like *Peabody*, is a case where the ALJ was faced with conflicting medical reports at the rebuttal stage. As we stated in *Peabody*, in black lung cases, the process of weighing conflicting medical evidence and drawing inferences therefrom properly lies within the authority of the ALJ. Our only function is to determine whether the ALJ's findings are supported by substantial evidence. *Peabody Coal Co. v. Office of Workers' Compensation Programs*, 778 F.2d at 362.

■ Here, the ALJ gave more weight to Dr. Dew's report than to Dr. Fulk's. Unless Dr. Dew's opinion departs so much from the information and test results before him as to offend reason, we will not question the ALJ's decision to give it more weight than Dr. Fulk's opinion. *See id.* at 363. Dr. Dew conducted a physical examination of Meyer. He studied the results of various tests including pulmonary function studies, arterial blood gas studies, a chest x-ray, and an electrocardiogram. Dr. Dew considered Meyer's work history, his medical history and his history of cigarette smoking. He concluded in his report that Meyer had a very minimal obstructive lung disease, was not disabled, and had no evidence whatsoever of coal workers' pneumoconiosis. Dr. Dew also gave an extensive deposition to both Meyer's attorney and Zeigler's attorney explaining the conclusions he reached in his medical report. In addition, Dr. Peter Tuteur, who testified at the formal hearing, reviewed all of the medical data in the record and agreed with Dr. Dew's conclusions.

Dr. Fulk also conducted a physical examination of Meyer. However, he did not perform the range of tests that Dr. Dew performed. The one ventilatory study he did perform yielded values insufficient to invoke the § 727.203(a)(2) presumption of disability for either a 72 inch or a 73 inch miner. While Dr. Fulk did inquire into Meyer's work history, he apparently was unaware of Meyer's smoking history. In addition, Dr. Fulk did not diagnose pneumoconiosis or explicitly state that Meyer suffered from a totally disabling disease. Rather, he diagnosed "pulmonary emphysema. R/O anthracosis. Severity of 2 flight dyspnea." Most importantly, Dr. Fulk did not explain his diagnosis or why he believed coal dust exposure caused Meyer's condition.

Dr. Dew's medical report and testimony constitute substantial evidence to support the ALJ's decision. They were thoroughly reasoned and were supported by both the tests Dr. Dew performed as well as the objective tests in the record.[5] Since the ALJ's findings are supported by substantial evidence, he did not err in holding that Meyer does not suffer from any totally disabling condition in his ability to perform his usual coal mine or comparable work.

■ Finally, in his written decision and order, the ALJ referred to Dr. Dew's conclusion that "Meyer [is] a healthy man capable of doing anything that any other 63 year old man is capable of doing." We disagree with Meyer's contention that the ALJ applied that phrase as the legal test of whether Zeigler established the (b)(2) rebuttal. The ALJ's mention of Dr. Dew's statement appears merely to take account of the fact that any diminished capacity Meyer has to perform his work may stem from his age rather than respiratory problems. Eventually, every coal miner, whether they suffer from pneumonoconiosis or not, will no longer be able to engage in the level of coal mining or comparable work as they could when they were younger. However, the Act does not compensate disability due to age, it compensates disability due to pneumonoconiosis caused by coal min-

**5.** In addition to the ventilatory studies discussed in footnote 2 *supra,* the record contains nineteen interpretations of eleven chest x-ray films. These films date from April 20, 1970, to January 15, 1981. Not a single reader interpreted any of these x-rays as positive for the presence of pneumoconiosis under 20 C.F.R. § 727.203(a)(1). In addition, the only arterial blood gas study contained in the record yielded normal values.

ing. The ALJ concluded that regardless of the effect of Meyer's age on his ability to work, there was no medical cause impairing him from engaging in coal mining or gainful work comparable to coal mining. Since that was the proper inquiry to make under (b)(2), and since the conclusion to that inquiry was supported by substantial evidence, the ALJ did not err in holding that Zeigler rebutted the interim presumption under (b)(2).

The decision of the Benefits Review Board is

AFFIRMED.