**Herman E. SUMMERS, Petitioner,**

v.

**FREEMAN UNITED COAL MINING CO. and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 93–1110.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 25, 1993.

Decided Jan. 27, 1994.

Rehearing Denied March 3, 1994.

Janet F. Gerske (argued), Chicago, IL, for petitioner.

Patricia M. Nece, Dept. of Labor, Appellate Litigation, Rodger Pitcairn (argued), Dept. of Labor, Office of the Sol., Washington, DC, for Office of Workers Compensation Programs.

Kathryn S. Matkov (argued), Gould & Ratner, Chicago, IL, for Freeman United Coal Min. Co.

Lisa L. Lahrman, Benefits Review Bd., Executive Counsel, Clerk of the Board, Washington, DC, for Benefits Review Bd.

Before POSNER, Chief Judge, MANION, Circuit Judge, and GRANT, District Judge.[1]

GRANT, District Judge.

Plaintiff, Herman Summers, appeals from a final decision of the U.S. Department of Labor's Office of Workers' Compensation Programs denying his claim for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* For the following reasons we now affirm the administrative decision.

## I. BACKGROUND

From 1948 through 1950, Herman Summers worked in the underground mines of the Old Ben Coal Company hanging trolley wire for locomotives. He moved to the surface in 1950, when he went to work as an electrician for Freeman United Coal Mining Company ("Freeman"). Mr. Summers stayed with Freeman until 1965, when he took a job as a maintenance supervisor at Southern Illinois University. In 1974, he returned to Freeman, teaching basic electrical concepts to miners for the first few months and subsequently assuming the position of assistant electrical engineer. In that capacity, he traveled above and below ground to supervise electrical repair work, working underground about one day a week. Mr. Summers retired in October 1980, on the recommendation of his treating physician, Dr. John McGowan, and has not worked since.

On October 9, 1980, Mr. Summers filed an application for disability benefits under the Black Lung Benefits Act (the "Act"), 30 U.S.C. § 901 *et seq.*, alleging total disability due to a respiratory impairment (asthma and breathing difficulty) which he contends was caused, at least in part, by his exposure to coal dust during the course of his coal mine employment. After initially finding that Mr. Summers was not entitled to benefits, the Office of Workers' Compensation Programs reconsidered the evidence, reversed the denial and notified Freeman that it was responsible for paying the award. Freeman refused and requested a hearing before an Administrative Law Judge ("ALJ").

The medical evidence presented at the hearing was not without conflict. The record shows that Mr. Summers has suffered from bronchial asthma and respiratory insufficiency since 1965, that he has been treated by Dr. John McGowan for that condition since December 1968, and that he was hospitalized fourteen times between 1968 and February 1982 for treatment related to his condition. Dr. McGowan and several consulting physicians, including Dr. William Getty, Dr. Parviz Sanjabi, Dr. Herman Lyle and Dr. David Wells, issued statements regarding Mr. Summers' condition. All concurred in the opinion that Mr. Summers was totally disabled as a result of a severe respiratory problem (bronchial asthma and chronic obstructive pulmonary disease). Drs. Getty and Sanjabi, the only two physicians to express an opinion on the issue of whether Mr. Summers' disability arose out of his coal mine employment, however, both indicated that it did not.

Dr. Getty indicated in his report of February 26, 1982 that a chest x-ray taken on February 25, 1982 showed the lungs to be

1. The Honorable Robert A. Grant, District Judge, United States District Court for the Northern District of Indiana, is sitting by designation.

clear. Dr. Eugene Hendershot, a Board Certified radiologist, read Mr. Summers' February 25 x-ray and reported that "no nodular infiltrates were seen, the cardiovascular shadow was normal, the pleural spaces showed no abnormality," and the x-ray was completely negative for pneumoconiosis. Dr. Joseph Rosenstein, a Board Certified radiologist and "B" reader, concurred with Dr. Hendershot's interpretation.[2] Based upon his examination of Mr. Summers, Mr. Summers' medical history, various test results and the chest x-ray, Dr. Getty opined:

> ... [Mr. Summers'] disability is based upon the development of intrinsic bronchitis approximately 16 years ago, about 1965 ... There may be evidence of aggravation of his pulmonary problem from the coal dust, but I do not believe this is the primary cause of his ailment. Asthmatic bronchitis is a type of allergic internal disorder usually in persons with an allergic nature in the past, or in the family.... Mr. Summers is totally incapacitated because of his pulmonary disease, but his pulmonary disease is not the result of his coal mining experience....

Dr. Parviz Sanjabi concurred with Dr. Getty's diagnosis. In a Report of Physical Examination dated January 12, 1981, Dr. Sanjabi indicated that although Mr. Summers suffered from atopic asthma by history, his condition was not related to dust exposure in his coal mine employment.

Balanced against this evidence were two x-ray reports showing that Mr. Summers was positive for pneumoconiosis: the first, a report by Dr. D. Sloan dated December 5, 1980 interpreting an x-ray of even date, and the second a report by Dr. Brent Brandon dated April 26, 1982, interpreting the February 25, 1982 x-ray taken during Dr. Getty's examination. While Dr. Brandon is both a Board Certified radiologist and a "B" reader, Dr.

Sloan is neither. Dr. Sloan's interpretation of the December 5, 1980 x-ray conflicted with a report by Dr. Rosenstein dated January 29, 1982, in which Dr. Rosenstein concluded that the December 1980 x-ray was not positive for pneumoconiosis. Dr. Brandon's interpretation of the February 25, 1982 x-ray conflicted with the earlier reports made by Drs. Getty, Hendershot and Rosenstein.

Resolving the conflict in the evidence in favor of Freeman, the ALJ found that while Mr. Summers may have been disabled as a result of a pulmonary impairment, his disability was not caused by, or the result of, his coal mine employment as evidenced by the reports of Drs. Getty and Sanjabi and the negative x-ray interpretations by Drs. Hendershot and Rosenstein. In rejecting the positive x-ray evidence offered by Mr. Summers, the ALJ stated:

> Dr. Sloan, who is neither a B-reader nor Board certified, found rounded opacities with a profusion of 1/1 in his 5 December 1980 reading. That x-ray, however, was reread by Dr. Rosenstein, a B reader, who found no evidence of coal miner's pneumoconiosis. Dr. Getty stated that an x-ray made 26 February 1982 showed the lungs to be clear. Drs. Hendershot and Rosenstein agreed.

The ALJ concluded on the basis of the foregoing that even if Mr. Summers had been entitled to a presumption of disability under 20 C.F.R. § 718.203(b), that presumption had been rebutted.[3] (Decision and Order dated December 19, 1986).

Mr. Summers thereafter sought review by the Benefits Review Board contending that the ALJ committed reversible error when he failed to consider entitlement under 30 U.S.C. § 921(c)(4) and 20 C.F.R. § 718.305 which establish yet another rebuttable presumption of disability due to pneumoconiosis

---

2. A "B" reader is a radiologist who has demonstrated a proficiency in evaluating and classifying chest x-rays for pneumoconiosis and other diseases by successfully completing an examination conducted by, or on behalf of, the Appalachian Laboratory for Occupational Safety and Health. 20 C.F.R. § 718.202(a)(1)(ii)(E); *Freeman United Coal Mining Co. v. Office of Workers' Compensation Programs*, 988 F.2d 706, 708 n. 2 (7th Cir. 1993).

3. 20 C.F.R. § 718.203(b) provides:

> If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines, there shall be a rebuttable presumption that the pneumoconiosis arose out of such employment.

for miners who have worked for fifteen years in an underground coal mine or under "substantially similar" conditions, and failed to identify a rational basis for rejecting evidence which favored his position, *i.e.*, the positive x-ray readings by Dr. Sloan and Dr. Brandon and Dr. Getty's acknowledgment that coal dust may have been an aggravating factor. The Board agreed and remanded the case for further consideration.

Mr. Summers fared no better on remand. By order dated June 6, 1991, the ALJ found that the cause of Mr. Summers' disability had been positively identified as asthma, not pneumoconiosis, and that the presumption of disability due to pneumoconiosis had therefore been rebutted. To the extent Dr. Getty indicated in his report of February 26, 1982 that there "may" be evidence of aggravation of Mr. Summers' pulmonary problem from the coal dust, the ALJ noted that no such evidence was presented, and found that Dr. Getty's "throw away" sentence "[could] not be 'characterized' in any way to establish a causal connection between claimant's pulmonary condition and his coal mine employment" when his report is read in its entirety. The ALJ thus concluded that Mr. Summers' claim should be denied. The Benefits Review Board affirmed the ALJ's decision on November 25, 1992, and this appeal followed.

In his petition for judicial review, Mr. Summers once again asserts a right to benefits under 20 C.F.R. §§ 718.202–718.204 and 30 U.S.C. § 921(c)(4). Mr. Summers contends that he presented direct evidence of total disability due to pneumoconiosis in the form of positive x-ray readings by Dr. Sloan and Dr. Brandon, that the ALJ should have given greater weight to that evidence, and that he erred as a matter of law in failing to do so. Alternatively, he contends that where, as here, the evidence (specifically Dr. Getty's report) did not expressly rule out coal dust exposure as a contributing cause of disability, the presumption of disability due to pneumoconiosis accorded under 30 U.S.C. § 921(c)(4) remains intact; and that the ALJ's findings to the contrary were not supported by substantial evidence.

## II. STANDARD OF REVIEW

■ The standard of review in black lung cases is well-settled. The ALJ's findings of fact must be affirmed if they are supported by substantial evidence in the record when viewed in its entirety. *Meyer v. Zeigler Coal Co.*, 894 F.2d 902, 906 (7th Cir.), *cert. denied*, 498 U.S. 827, 111 S.Ct. 84, 112 L.Ed.2d 57 (1990); *Amax Coal Co. v. Director, Office of Workers' Compensation Programs*, 801 F.2d 958, 961 (7th Cir.1986); *Peabody Coal Co. v. Director, Office of Workers' Compensation Programs*, 778 F.2d 358, 362 (7th Cir.1985); *Old Ben Coal Co. v. Prewitt*, 755 F.2d 588, 589 (7th Cir.1985). A reviewing court may not reweigh the evidence or resolve inconsistencies therein, and it may not make credibility determinations. *Meyer*, 894 F.2d at 906; *Amax Coal Co. v. Burns*, 855 F.2d 499, 501 (7th Cir.1988); *Peabody Coal Co. v. Benefits Review Bd.*, 560 F.2d 797, 802 (7th Cir.1977). Those powers are within the sole province of the ALJ. *Meyer*, 894 F.2d at 906; *Freeman United Coal Mining Co. v. Benefits Review Bd.*, 879 F.2d 245, 249 (7th Cir.1989); *Peabody Coal Co.*, 560 F.2d at 802.

## III. DISCUSSION

### A. Direct Evidence of Disability

■ Mr. Summers contends that the x-ray reports by Dr. Sloan and Dr. Brandon provided direct evidence of clinical pneumoconiosis and established his right to benefits under 20 C.F.R. §§ 718.202–718.204, and that the ALJ should have given controlling weight to those reports as a matter of law. Mr. Summers' understanding of the law is incorrect. While benefits may not be denied solely on the basis of negative x-ray evidence, 20 C.F.R. § 718.202(b); *Pancake v. Amax Coal Co.*, 858 F.2d 1250, 1255 (7th Cir.1988); *Peabody Coal Co. v. Lowis*, 708 F.2d 266, 274 (7th Cir.1983); *Underhill v. Peabody Coal Co.*, 687 F.2d 217, 223 (7th Cir.1982), nothing in the law mandates a finding of disability where, as here, the x-ray evidence conflicts. It is the sole province of the ALJ to weigh the evidence and resolve conflicts therein. *Meyer*, 894 F.2d at 906; *Freeman United Coal Mining Co.*, 879 F.2d at 249; *Peabody Coal Co.*, 560 F.2d at 802.

■ The ALJ clearly credited the reports by Drs. Getty, Hendershot and Rosenstein over those of Dr. Sloan and Dr. Brandon, and articulated his reasons for doing so in his decisions of December 19, 1986 and June 6, 1991. Dr. Sloan's positive interpretation of the December 1980 x-ray conflicted with the negative reading given by Dr. Rosenstein. Dr. Rosenstein is both a Board Certified radiologist and "B" reader, Dr. Sloan is neither. *Freeman United Coal Mining Co.*, 879 F.2d at 249 ("The ALJ properly may give more credence to readings by "B" readers"); *Consolidation Coal Co. v. Chubb*, 741 F.2d 968, 971–73 (7th Cir.1984). Dr. Brandon's positive reading of the February 25, 1982 x-ray conflicted with the negative interpretations offered by Dr. Rosenstein and Dr. Hendershot. Although Dr. Brandon's credentials are superior to Dr. Hendershot's, they are identical to Dr. Rosenstein's. The court also notes that Dr. Brandon's findings were in direct conflict with Dr. Getty's medical opinion as to the cause of Mr. Summers' disability.

In denying Mr. Summers' claim for benefits, the ALJ placed a great deal of reliance upon the medical opinions expressed by Drs. Getty and Sanjabi, both of whom opined that Mr. Summers' disabling respiratory impairment was not the result of his coal mine experience. Dr. Getty's medical opinion was based not only on the negative x-ray reading, but on a physical examination, Mr. Summers' medical history, blood-gas and pulmonary function studies. Although the objective medical findings upon which Dr. Sanjabi's report was based were not disclosed, he too opined after examining Mr. Summers that his condition was not related to dust exposure in his coal mine employment. Dr. Sanjabi's diagnosis corroborates that of Dr. Getty.

Mr. Summers contends, however, that the inferences drawn by the ALJ in evaluating Dr. Getty's report were incorrect, and that his report actually supports a finding of "legal" pneumoconiosis.[4] He contends that "[Dr. Getty] stated only that the coal dust was not 'the primary cause of his ailment,' thus implying that it *was* a contributing factor." Had Dr. Getty failed to state an opinion as to the actual cause of Mr. Summers' pulmonary impairment, Mr. Summers' argument might have been more persuasive. He did not.

In his report of February 26, 1982, Dr. Getty identified the cause of Mr. Summers' disability as "intrinsic bronchitis," an allergic internal disorder which developed around 1965. While he indicated that there *may* be evidence of aggravation of the disease by coal dust, Dr. Getty stated in unequivocal terms that Mr. Summers' pulmonary disease *"[was] not the result of his coal mining experience."* The ALJ found that Dr. Getty's report when read in its entirety was "clear and unambiguous", and that Mr. Summers' argument and the Board's remand was based on one sentence of the report taken out of context. We agree. A reviewing court cannot set aside the ALJ's findings simply because Mr. Summers believes his interpretation of Dr. Getty's report is more reasonable, *Meyer*, 894 F.2d at 906; *Amax Coal Co.*, 855 F.2d at 501, nor would we be inclined to do so. Dr. Getty's medical opinion was well-reasoned and added probative value to the negative x-ray evidence, *Pancake*, 858 F.2d at 1256; *Underhill*, 687 F.2d at 223. When considered in combination with Dr. Sanjabi's report, this evidence provides ample support for the ALJ's resolution of the conflict in the evidence and his denial of Mr. Summers' claim for benefits. *See* 20 C.F.R. § 718.-202(a);[5] *Freeman United Coal Mining Co.*,

4. The statutory definition of pneumoconiosis is found at 20 C.F.R. § 718.201, which provides:

For the purpose of the Act, *pneumoconiosis* means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment ... a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or

substantially aggravated by, dust exposure in coal mine employment.

5. 20 C.F.R. § 718.202(a) provides:
   (a) A finding of the existence of pneumoconiosis may be made as follows:
   (1) A chest X-ray conducted and classified in accordance with § 718.102 may form the basis for a finding of the existence of pneumoconiosis. Except as otherwise provided in this section, *where two or more X-ray reports are in*

879 F.2d at 249; *Peabody Coal Co. v. Hale,* 771 F.2d 246, 249 (7th Cir.1985); *Consolidation Coal Co.,* 741 F.2d at 971–73.

### B. The Rebuttable Presumption— 30 U.S.C. § 921(c)(4)

Mr. Summers contends in the alternative that he met the prerequisites of 30 U.S.C. § 921(c)(4) and was entitled to the presumption accorded thereunder; that the medical evidence in his case did not rule out coal dust exposure as a contributing cause of his pulmonary impairment; and that the ALJ therefore erred as a matter of law when he found that the presumption of disability due to pneumoconiosis had been rebutted. We disagree.

30 U.S.C. § 921(c)(4) provides:

If a miner was employed for fifteen years or more in one or more underground coal mines ... and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis.... The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. *The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.*

(Emphasis added).

Both the Department of Labor and Mr. Summers urge this court to hold as a matter of law that an individual who has worked for a coal mining company *above ground* for fifteen years or more need not demonstrate that his working conditions on the surface were "substantially similar" to those underground to proceed under the presumption set out in 30 U.S.C. § 921(c)(4). We must decline their invitation. Whether Mr. Summers was entitled to the presumption of § 921(c)(4) is not a dispositive issue in this case. The ALJ assumed for the sake of argument that he was, and so must we.

Which leaves us with the real issue at hand: whether the ALJ's finding that the presumption of § 921(c)(4) had been rebutted is supported by substantial evidence. Mr. Summers contends that it was not, but simply reasserts his earlier arguments. He contends that the positive x-ray evidence should have controlled and that the opinions rendered by Dr. Getty and Dr. Sanjabi were too equivocal to support a finding that the presumption accorded under § 921(c)(4) and 20 C.F.R. § 718.305 had been rebutted. As our previous discussion demonstrates, we find Mr. Summers' arguments unpersuasive. They are premised on the mistaken belief that we have the power to review an administrative decision *de novo,* to reweigh the evidence, to resolve conflicts therein, and to substitute our own inferences, or those of the claimant, for those made by the ALJ. We do not. *Meyer,* 894 F.2d at 906; *Amax Coal Co.,* 855 F.2d at 501; *Peabody Coal Co.,* 560 F.2d at 802.

### IV. CONCLUSION

The ALJ's findings of fact and the conclusions drawn therefrom are supported by substantial evidence in the record as a whole. There being no error of law, the decision is

AFFIRMED.

*conflict, in evaluating such X-ray reports consideration shall be given to the radiological qualifications of the physicians interpreting such X-rays.*