## In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1758

KENNELLIS ENERGIES, INCORPORATED
and ROYAL & SUN ALLIANCE USA,

*Petitioners,*

*v.*

SHELBY HALLMARK, Director, Office of Workers'
Compensation Programs, United States Department
of Labor, and ROBERT RAY,

*Respondents.*

Petition for Review of an Order of the Benefits Review Board.
No. 00-BLA-1018

ARGUED APRIL 2, 2003—DECIDED JUNE 25, 2003

Before BAUER, EASTERBROOK, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* After a tortuous procedural journey, including multiple decisions by an Administrative Law Judge and the Benefits Review Board of the Office of Workers' Compensation Programs, Petitioners Kennellis Energies, Inc., and Royal & Sun Alliance USA (collectively, "Kennellis") seek review of an award of benefits to Respondent Robert Ray after a finding of his total disability due to coal miners' pneumoconiosis. We affirm the decision of the Benefits Review Board.

## BACKGROUND

Ray began working in the coal mines at the age of twenty in 1948, and until 1952 he worked as a trapper, bottom laborer, and shuttle car operator for Old Ben Coal Company. From 1957 to 1969, Ray worked for Peabody Coal Company as a haulage truck driver, drill helper and operator, and fire shooter in a strip mine. Between 1969 and 1980, Ray returned to Old Ben Coal, where he served as a continuous mine operator and deputy mine inspector. Finally, from 1984 to 1985, Ray worked for Kennellis at the Bushy Creek Mine as an underground roof bolter. In that capacity, he worked in low coal, with a roof height of four to six feet, where he was required to constantly lift, carry, and install fifteen-pound roof bolts into the mine ceiling. In a typical day, he would install 150-200 bolts.

Beginning in 1977 or 1978, Ray experienced episodes of shortness of breath and weakness, which prevented him from keeping pace with fellow workers. In 1984, Ray injured both of his knees in separate incidents, the first of which required surgical repair and time-off from work for recovery; he continued to work after the second injury and did not have it repaired until after retiring from the coal mines. Ray also suffers from hypertension and arthritis and smoked approximately three-fourths of a pack of cigarettes per day for nearly forty years, quitting in approximately 1982 or 1983. He retired from mine employment in October 1985.

Ray filed his original claim for federal black lung benefits with the Office of Workers' Compensation Programs (OWCP) on September 29, 1980, but that claim was administratively denied on March 9, 1981, because, although sufficient proof of pneumoconiosis existed, there was insufficient evidence to support a finding of total disability. After he retired, however, Ray filed a second claim for

benefits in April 1986. In order to prevail on this claim, Ray was required to show that a "material change" had occurred in his condition since his original claim was denied in 1981. After reviewing the evidence, a district director for OWCP recommended that Ray's claim be denied again. Ray then requested a formal hearing before an Administrative Law Judge (ALJ).

Ray's hearing was scheduled for June 1988 but was delayed for three years as the proper procedure for reviewing the district director's denial was debated within the Department of Labor. Ray's hearing was eventually held on March 2, 1991, before ALJ Robert S. Amery, who issued a decision awarding benefits to Ray in October 1991. Judge Amery concluded that a material change had occurred in Ray's condition between the filing of his two claims and that the evidence showed Ray suffered from pneumoconiosis resulting in a total disability.

Kennellis appealed that ruling to the Benefits Review Board of OWCP ("Board"), which remanded the claim for reconsideration of several issues in September 1993. The Board determined that Ray had been employed for at least twenty-five years in coal mines but remanded Judge Amery's finding of material change in light of this Circuit's decision in *Sahara Coal Co. v. Office of Workers' Comp., United States Dept. Of Labor*, 946 F.2d 554 (7th Cir. 1991) [hereinafter *McNew*]. The Board also directed the ALJ to review the finding of pneumoconiosis because the ALJ's opinion suggested a preference for the treating physician's opinion, which had been rejected by this Circuit in *Peabody v. Helms*, 901 F.2d 571 (7th Cir. 1990), and *Amax Coal Co. v. Beasley*, 957 F.2d 324 (7th Cir. 1992). Further, the Board directed the ALJ to review the finding of total disability due to pneumoconiosis.

Accordingly, Judge Amery reviewed the case and issued a second decision on March 3, 1994, reinstating the

award of benefits. The ALJ specifically found that Ray's pneumoconiosis met the *McNew* standard and that the majority of medical opinions established total disability due to pneumoconiosis. Kennellis appealed the findings to the Board again. Just as before, the Board remanded the claim for further findings in May 1995 and ordered review of the material change finding because the ALJ did not consider all medical opinions that addressed the issue of total disability. Review was also ordered of the findings of pneumoconiosis and total disability because this Circuit, in *Sahara Coal Co. v. Fitts*, 39 F.3d 781 (7th Cir. 1994), decided in the interim, had rejected reliance solely on numerical superiority in weighing medical opinion evidence. Further, the Board sought additional explanation from the ALJ as to how he weighed the physicians' opinions to determine causation.

When the case was remanded the second time, Judge Amery was no longer available, so the case was assigned to ALJ Ellen M. O'Shea. Judge O'Shea issued her findings on October 3, 1997, awarding benefits to Ray once again. As Judge Amery had concluded before, Judge O'Shea found a material change in Ray's condition that established total disability due to pneumoconiosis. In an all too familiar pattern (some seventeen years into this litigation), an appeal was taken and the Board remanded the case again for further findings. The Board affirmed Judge O'Shea's findings of material change and pneumoconiosis but required additional discussion of the medical opinions relating to the findings of total disability and causation as well as the onset date of Ray's pneumoconiosis.

On June 21, 2000, Judge O'Shea issued the fourth (her second) and final decision awarding benefits to Ray. Her opinion further explained, as requested, how she weighed the medical opinion evidence to determine total disability due to pneumoconiosis and thus a material change in Ray's condition. With respect to the onset date

of Ray's disability, Judge O'Shea noted that the evidence did not establish a specific date, so that benefits would become payable as of the month Ray filed his claim. Kennellis initiated a fourth appeal, but the Board affirmed the ALJ's findings in their entirety on July 27, 2001. Kennellis then filed this appeal.

Between September 1980 and July 1989, Ray underwent ten different physical examinations by eight physicians.[1] Each physician administered a battery of tests to assess Ray's cardiovascular and pulmonary health. On the whole, their reports indicated that Ray complained of shortness of breath and fatigue after walking only one to two blocks, climbing a flight of ten to twelve steps, or lifting and carrying approximately fifty pounds twenty to fifty feet. The reports also noted an increase in symptoms in the years following Ray's original claim in 1980. The doctors' diagnoses included combinations of chronic obstructive pulmonary disease, hypertension, chronic bronchitis, joint disease/arthritis, and/or pneumoconiosis. Chest X-rays returned mixed findings. After twenty-six readings were performed by numerous radiologists and physicians, eight found evidence of pneumoconiosis in the X-ray, while seventeen did not (though eleven of

---

[1] The following is a list of the medical examinations Ray underwent in the nine-year span discussed above, including the physician's name, the date of the examination, and whether pneumoconiosis was diagnosed: 1) Dr. Parviz B. Sanjabi, September 23, 1980, possible simple pneumoconiosis; 2) Dr. Y. N. Chiou, November 18, 1980, negative; 3) Dr. W. H. Getty, December 28, 1980, negative; 4) Dr. Bob G. Thompson, April 21, 1986, positive; 5) Dr. Parviz B. Sanjabi, May 1, 1986, positive; 6) Dr. G. V. Ranga Rao, May 19, 1986, positive; 7) Dr. John E. Myers, Jr., January 20, 1987, positive; 8) Dr. Peter G. Tuteur, March 24, 1987, negative; 9) Dr. William C. Houser, April 12, 1988, positive; and 10) Dr. Peter G. Tuteur, July 11, 1989, negative.

those doctors reported other findings, such as aortic arterio-sclerosis or pleural abnormalities).

Of the eight physicians who physically examined Ray, five concluded specifically that he suffered from pneumoconiosis, while three did not. Some also specifically linked their finding of pneumoconiosis to Ray's occupational exposure to coal dust. One of the physicians (Dr. Tuteur) who did not diagnose pneumoconiosis, however, could not definitively rule out the disease, based on Ray's respiratory problems and occupational history, despite a normal chest X-ray and his history as a smoker.[2]

## ANALYSIS

Because Kennellis seeks review of the Board's decision affirming the ALJ's award of benefits, we review the decision of the ALJ to determine if it was rational, supported by substantial evidence on the record as a whole, and not contrary to law. *Peabody Coal Co. v. Shonk*, 906 F.2d 264, 267 (7th Cir. 1990). Substantial evidence is that which a reasonable mind might accept as adequate to support a particular conclusion. *Pancake v. AMAX Coal Co.*, 858 F.2d 1250, 1255 (7th Cir. 1988). We may not set aside an inference simply because we find the opposite conclusion more reasonable or question the factual basis. *Id.* Making credibility determinations and resolving inconsistencies in the evidence is within the sole province of the ALJ. *Meyer v. Zeigler Coal Co.*, 894 F.2d 902, 906 (7th Cir. 1990). Accordingly, if we determine the ALJ's decision was properly supported, we will affirm the decision of the Board to uphold the ALJ's ruling. *Shonk*, 906 F.2d at 267.

---

[2]  Due to the abundance and diversity of medical opinions in this case, further discussion of particular physicians' opinions follows below as it pertains to each issue presented upon appeal.

Kennellis assigns as error the following four issues: 1) the ALJ's determination that a material change had occurred in Ray's condition to permit consideration of his duplicate claim; 2) the ALJ's finding that Ray established he suffered from pneumoconiosis by medical opinion evidence; 3) the ALJ's finding of total disability; and 4) the ALJ's determination that pneumoconiosis was the cause of Ray's total disability in light of his other health problems. We examine each issue in turn.

### A. Whether a "material change" occurred due to total disability

In order to consider Ray's duplicate claim (because his original claim had been denied in 1981), the ALJ was required to determine first whether a material change had occurred in Ray's condition. A material change may be shown two ways. First, the miner can show that he did not have pneumoconiosis at the time of his original claim but has since contracted and become totally disabled by the disease. Second, and the method by which the ALJ determined Ray demonstrated a material change, the miner can show that the disease's progress has resulted in total disability although it was not totally disabling at the time of the original application. *McNew*, 946 F.2d at 556. Ray's original claim was denied because he could not prove his pneumoconiosis was totally disabling in 1980. Because the ALJ found that a material change had occurred in Ray's condition by concluding that he had since become totally disabled by the disease, our review necessarily considers whether that determination is in line with the *McNew* standard and supported by substantial evidence.

The ALJ relied primarily upon the opinion of Dr. Myers, who is board-certified in internal medicine, to find total disability—a conclusion which the Board affirmed prior

to its final remand. Specifically, the ALJ concluded that Dr. Myers' opinion was documented, well-reasoned, and accounted for numerous test results, some of which might have led to a negative pneumoconiosis diagnosis. Dr. Myers' ultimate conclusion, however, was that Ray demonstrated pneumoconiosis to the point of total disability based on a complete pulmonary examination and Ray's employment history as a coal miner.

In remanding the case for the third and final time, the Board merely asked the ALJ to demonstrate further how she weighed all of the medical opinions to find a material change in Ray's condition. To that end, the ALJ rationally concluded that the opinions of Drs. Sanjabi and Rao also showed a worsening of Ray's pneumoconiosis symptoms since 1980 and that the disease's progress affected his ability to perform the arduous tasks required of a roof bolter at the time he filed his duplicate claim, thereby supporting Dr. Myers' finding of total disability. Further, the ALJ concluded that Dr. Thompson's and Dr. Rao's reports did not provide evidence contrary to Dr. Myers' specific finding of total disability because those physicians did not address Ray's functional ability to perform his job.

The ALJ also concluded that Dr. Houser's report was ambiguous on the issue of total disability because his report did not specifically conclude that Ray could return to his coal mine job. Rather, Dr. Houser merely stated that he found "no functional disability." The ALJ discredited this particular statement by Dr. Houser because Dr. Houser did not explain the exact meaning of "no functional disability," nor did he explain whether that statement referred to Ray's ability to perform his particular job. We do not find the ALJ's conclusion irrational in this instance; she compared Dr. Houser's report to those of Drs. Tuteur and Getty, who also found no total disability and specifically stated that Ray *could* perform the par-

ticular tasks associated with his coal mine job. Dr. Houser's lone, unexplained reference to functional ability is not sufficient to overturn the ALJ's finding of total disability. This finding is further supported by Dr. Houser's admissions that Ray's pulmonary condition was not entirely normal and could be affected by heavy, exertional work.

Finally, the ALJ reaffirmed her decision to discredit the report and opinion of Dr. Tuteur because she found his findings to be speculative, conclusory, and unsupported—another determination the Board did not disturb upon its final remand. Dr. Tuteur opined that Ray did not have pneumoconiosis and that his pulmonary problems were related to his smoking but failed to explain why Ray's breathing problems continued after Ray ceased smoking approximately three to four years prior to filing his duplicate claim. The ALJ also did not find Dr. Tuteur's opinion persuasive in light of Dr. Houser's opinion that some of the effects of smoking can resolve or improve following the cessation of smoking.

Dr. Tuteur also opined that Ray's breathing problems were not related to the inhalation of coal dust, though Ray's exposure to coal dust continued well after he ceased smoking. Dr. Tuteur did conclude, however, that Ray's breathing problems were not attributable to obesity, his knee injuries, or any other musculoskeletal problems. We do not find the ALJ's determination to discredit Dr. Tuteur's opinion irrational or unsupported by the evidence, noting that "[w]hether a medical opinion is reasoned . . . is a decision that rests ultimately with the ALJ, not with us." *Freeman United Coal Mining Co. v. Summers*, 272 F.3d 473, 483 (7th Cir. 2001).

Accordingly, we find that the ALJ's determination that Ray's pneumoconiosis had progressed to the point of total disability (whereas it had not when he filed his original claim in 1980) was rational, supported by substantial

evidence, and in line with the *McNew* standard. Ray therefore demonstrated a material change in his condition making consideration of his duplicate claim proper.

### B. Whether Ray established pneumoconiosis

We now consider whether Ray adequately demonstrated that he suffered from pneumoconiosis. Proof of pneumoconiosis may entail any of the following: 1) X-ray evidence; 2) biopsy evidence; 3) proof of complicated pneumoconiosis under 20 C.F.R. §§ 718.304-306; or 4) reasoned and documented medical opinion evidence notwithstanding a negative X-ray reading. 20 C.F.R. § 718.202(a)(1)-(4) (2003). We focus on the ALJ's determination that Ray proved he suffered from pneumoconiosis through medical opinion evidence.

In concluding that Ray suffered from pneumoconiosis, the ALJ examined the reports of Drs. Myers, Sanjabi, Rao, Thompson, and Houser, all of whom diagnosed Ray with pneumoconiosis. These reports, when considered as a whole, took into account the various X-ray readings and tests Ray underwent as well as his physical symptoms and medical and work history. Only Dr. Tuteur's opinion was contrary. The ALJ discredited his opinion for the reasons discussed above, and we see no reason to overturn that finding. *Summers*, 272 F.3d at 483.

Kennellis' argument boils down to a claim that the ALJ weighed the medical opinions improperly and that Dr. Tuteur's negative conclusions are more persuasive. As we noted above, making credibility determinations and resolving inconsistencies in the evidence is within the sole province of the ALJ. *Id.*; *Meyer*, 894 F.2d at 906. We find, therefore, that Ray adequately demonstrated that he suffered from pneumoconiosis.

### C. *Whether Ray's pneumoconiosis was the cause of his total disability*

The ALJ's determination that Ray showed a material change hinged upon a finding of total disability, and because we agree with that finding, we need not revisit the issue of total disability here. There remains only the issue of causation. Kennellis argues that Ray had several *potential* sources of disability, including knee problems, heart disease, obesity, cigarette smoking, age, and coal dust exposure. What Kennellis fails to provide, however, is any evidence supporting a conclusion that Ray's pneumoconiosis was *not* the cause of his total disability.

The ALJ relied upon the well-reasoned and documented medical opinion of Dr. Myers (supported by the findings of Drs. Sanjabi and Rao as to Ray's limitations), who concluded that Ray's pneumoconiosis was the cause of his total disability. Only Dr. Tuteur's opinion, which the ALJ permissibly discredited, supports Kennellis' argument. No other medical opinion contradicts Dr. Myers' opinion on the issue of causation. Absent proof that Ray's other ailments caused his total disability prior to the onset of his pneumoconiosis, Kennellis' argument cannot prevail. *See Peabody Coal Co. v. Vigna*, 22 F.3d 1388, 1394 (7th Cir. 1994). We find that the ALJ's determination that Ray's pneumoconiosis was the cause of his total disability is supported by substantial evidence.

The decision of the Board upholding the ALJ's ruling is AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-02-C-0072—6-25-03